Marc W. Brown, Justice
This case involves an inverse-condemnation suit brought by appellants Joe Murphy, Yoram Ben-Amram, and Galtex Development, LLC (collectively, the Property Owners), against appellee the City of Galveston, Texas. By previous interlocutory appeal, this court considered the trial court's denial of the City's initial plea to the jurisdiction. We reversed in part the trial court's order and rendered judgment dismissing the Property Owners' takings claims with regard to the City's denial of a Specific Use Permit (SUP) for the property at issue. City of Galveston v. Murphy , 533 S.W.3d 355, 357, 366 (Tex. App.-Houston [14th Dist.] 2015, pet. denied). We affirmed in part with regard to the Property Owners' takings claims based on the City's revocation of the property's grandfathered, non-conforming zoning status. Id.
On remand, the trial court considered the City's second plea to the jurisdiction, which asserted that the trial court lacked *238 subject-matter jurisdiction because the Property Owners failed to exhaust their administrative remedies regarding the City's revocation of the property's non-conforming status. The trial court granted the City's second plea. The Property Owners do not dispute that they did not take an administrative appeal to challenge the City's revocation decision. Nevertheless, the Property Owners argue that they otherwise raised a fact issue to defeat the City's entitlement to dismissal. The Property Owners also contend that this court should revisit its decision to reverse in part and render judgment dismissing the Property Owners' takings claim for the City's denial of the SUP. We affirm.
I. BACKGROUND
Our January 2015 opinion from the prior appeal contains a detailed factual and procedural background of the case. Id. at 357-58. In April 2015, we denied the Property Owners' motions for panel rehearing and en banc rehearing. The Property Owners filed a petition for review, which the Texas Supreme Court denied in November 2015.
In June 2016, the City filed a second plea to the jurisdiction-arguing that although local zoning standard, section 29-212, gave the Property Owners the right to take an administrative appeal from the loss of the property's non-conforming status to the Zoning Board of Adjustment (ZBA), the Property Owners did not do so. Therefore, because the Property Owners failed to exhaust their administrative remedies, the trial court did not have subject-matter jurisdiction.[1] The Property Owners filed a motion to strike the City's plea and a response to the plea.
The trial court held an evidentiary hearing on September 27 and 28, 2016. Catherine Gorman, who was the City's Senior Planner and Assistant Historic Preservation Officer, testified for the City. Gorman testified that she was familiar with the City's zoning standards at the time. Gorman explained that although the property was located in the East End Historical District zoned for single-family dwellings, it had been subject to "non-conforming" or "grandfather" use as a multi-family dwelling because the apartment buildings existed prior to the creation of the district and the zoning standards. Gorman further explained that at the time, under section 29-111(a)(4) of the zoning standards, if a non-conforming multi-family dwelling went six months or longer without being actually occupied for multi-family use, then it would lose its "grandfather" status.[2] Without this status, the property would need to have an approved SUP to be legally occupied as a multi-family dwelling.
According to Gorman, any adverse zoning decision such as loss of "grandfather" status can be appealed to the ZBA under *239 section 29-112(c).[3] If an aggrieved person decides to appeal, then "[s]uch appeal shall be taken within a reasonable time after the decision has been rendered by the administrative officer, by filing with the officer from whom the appeal is taken and with the Board, a notice of appeal specifying the grounds thereof." If an aggrieved person appeals an adverse zoning decision to the ZBA, and the ZBA overrules the appeal, then under section 29-112(o) the aggrieved person can file a petition for appeal "in a court of competent jurisdiction" within ten days of the ZBA's decision.[4]
Gorman testified that, after the property had been vacant for at least six months, Ben-Amram received an email from a City compliance officer regarding the loss of the property's non-conforming status under section 29-111(a)(4). According to Gorman, Ben-Amram (1) could have appealed the revocation decision to the ZBA, (2) could have submitted an application for a SUP on the property, or (3) both. Gorman stated that Ben-Amram only filed for a SUP and did not file an appeal with the ZBA with respect to the revocation of the property's "grandfather" status. Gorman stated that she did not know of any "appeal mechanism under the administrative procedure set up in the zoning standards for appealing directly from a denial of grandfather status to the District Courts."
During the hearing, the City also presented excerpts from the City's zoning standards; excerpts from title 7, subtitle A, chapter 211, subchapter A, entitled "General Zoning Regulations," of the Texas Local Government Code; and an email dated May 10, 2010, to Ben-Amram from City Code Enforcement Officer Kandelle Wells, notifying Ben-Amram that the property had lost its "legally non-conforming status" under section 29-111(a)(4).
The Property Owners presented testimony from Elizabeth Beeton, former City Councilmember, and from Douglas Godinich, former City Secretary. The Property Owners also presented excerpts from the deposition of Wendy O'Donohoe, who was Director of the City's Planning and Community Development Department.
The Property Owners requested that the trial court take judicial notice of the prior proceedings in the case-the transcript of the February 18, 2014 evidentiary hearing on the City's first plea to the jurisdiction, as well as exhibits admitted during the hearing, and excerpts from the February 10, 2011 City Council Regular Meeting. The trial court took judicial notice; these items also were admitted as exhibits.
On October 17, 2016, the trial court *240 signed an order granting the City's plea.[5] The Property Owners filed a motion for new trial, which was overruled by operation of law. The Property Owners timely appealed.
II. ANALYSIS
A. Standard of review
We review de novo the trial court's ruling on a plea to the jurisdiction. Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 228 (Tex. 2004). Where, as here, the plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court considers relevant evidence submitted by the parties. Id. at 227. If the evidence creates a fact question regarding jurisdiction, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. Id. at 227-28. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. Id. at 228.
"[T]his standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c).... By requiring the [governmental entity] to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to put on their case simply to establish jurisdiction." Id. (internal quotation marks and citation omitted); Murphy , 533 S.W.3d at 359.
Under this standard, we credit as true all evidence favoring the nonmovant and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. Miranda , 133 S.W.3d at 228. The movant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. Id. Evidence is conclusive only if reasonable people could not differ in their conclusions. City of Keller v. Wilson , 168 S.W.3d 802, 816 (Tex. 2005). If the movant discharges this burden, the nonmovant then must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained. See Miranda , 133 S.W.3d at 228.
B. Administrative remedies
Section 211.008 of the Texas Local Government Code, "Board of Adjustment," authorizes the appointment of a board of adjustment by the government body of a municipality and provides requirements for membership, adoption of rules, and proceedings. See Tex. Loc. Gov't Code Ann. § 211.008 (West 2016). Section 211.009, "Authority of Board," provides that a local board of adjustment may hear and decide appeals that allege an error in an order, requirement, decision, or determination made by an administrative official in the enforcement of a local zoning ordinance. Id. § 211.009(a)(1). Section 211.010, "Appeal to Board," provides that an appeal of a local administrative official's zoning decision may be brought to the board of adjustment by "a person aggrieved by the decision" "within a reasonable time." Id. § 211.010(a)-(b). Section 211.011, "Judicial Review of Board Decision," provides for judicial review of the decision of the board of adjustment; an aggrieved person may present its petition alleging that the decision is illegal to a district court, county court, or county court at law within ten days of the decision. Id. § 211.011(a)-(b).
Section 29-112 of the City's zoning standards, "Board of Adjustment," generally tracks the language of chapter 211 of the *241 Local Government Code. See id. §§ 211.008 -.011. Under section 29-112(f), the ZBA has the power to "hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of the zoning laws of the City." See id. § 211.009(a)(1). Section 29-112(c) permits "[a]ppeals to the Board ... by any person aggrieved" "within a reasonable time." See id. § 211.010(a)-(b). Under section 29-112(o), any person aggrieved by a decision of the ZBA may appeal by filing a petition in a court of competent jurisdiction within ten days of the decision. See id. § 211.011(a)-(b).
C. Exhaustion
The exhaustion rule requires that plaintiffs "pursue all available remedies within the administrative process before seeking judicial relief." Lazarides v. Farris , 367 S.W.3d 788, 798 (Tex. App.-Houston [14th Dist.] 2012, no pet.) (citing Larry Koch, Inc. v. Tex. Nat. Res. Conservation Comm'n , 52 S.W.3d 833, 839 (Tex. App.-Austin 2001, pet. denied) ). The failure to do so deprives the trial court of jurisdiction to decide the case. Id. In particular, "[a]dministrative remedies available under section 211 of the Local Government Code generally must be exhausted before a party may seek judicial review of a determination made by an administrative official." Id. ; Horton v. City of Smithville , No. 03-07-00174-CV, 2008 WL 204160, at *4 (Tex. App.-Austin Jan. 25, 2008, pet. denied) (mem. op.) (" Texas Local Government Code sections 211.009 and 211.010 provide administrative remedies regarding local zoning decisions that must be exhausted before such matters may be brought to the courts for determination."); City of San Antonio v. El Dorado Amusement Co., Inc. , 195 S.W.3d 238, 250 (Tex. App.-San Antonio 2006, pet. denied) ("The administrative remedies provided by the Local Government Code must be exhausted before matters regarding non-conforming uses may be brought before the courts.").
Here, the City presented evidence that the Property Owners could have filed an administrative appeal to the ZBA pursuant to the zoning standards and chapter 211 within a reasonable time after the City informed Ben-Amram that the property was in violation of section 29-111(a)(4) and had lost its non-conforming status. The City presented evidence that the Property Owners failed to appeal this decision to the ZBA. Because the Property Owners did not appeal the loss of the property's "grandfather" status to the ZBA, they failed to exhaust their administrative remedies, and the trial court did not have subject-matter jurisdiction over their takings claims. See Lazarides , 367 S.W.3d at 800 ; Horton , 2008 WL 204160, at *6.
The Property Owners do not dispute that they failed to appeal the loss of the property's "grandfather" status to the ZBA. In their first issue, however, the Property Owners argue that the trial court erred in granting the City's plea to the jurisdiction based on exhaustion because they raised a fact issue that the doctrines of equitable estoppel and business compulsion apply to their claims. We disagree.
1. Not an exceptional case requiring estoppel
The Property Owners first contend that because the City did not inform them of the option to appeal the revocation decision to the ZBA and instead only informed them of the option to apply for a SUP on the property, the City should be estopped from insisting on exhaustion.
"Estoppel, an equitable defense, 'arises where by fault of one, another has been induced to change his position *242 for the worse.' " Office of Atty. Gen. of Tex. v. Scholer , 403 S.W.3d 859, 862 (Tex. 2013) (quoting Wirtz v. Sovereign Camp, W.O.W. , 268 S.W. 438, 441 (Tex. 1925) ) (footnote omitted). "The purpose of estoppel[ ] is to prevent injustice and protect those who have been misled." Roberts v. Haltom City , 543 S.W.2d 75, 80 (Tex. 1976).
The general rule is that a city cannot be estopped from performing its governmental functions. Id. ; City of Hutchins v. Prasifka , 450 S.W.2d 829, 836 (Tex. 1970). Estoppel may be applied in exceptional cases where justice requires its application. Roberts , 543 S.W.2d at 80 ; Prasifka , 450 S.W.2d at 836. The Texas Supreme Court has identified various factors that courts may consider in determining whether justice requires estoppel, including: whether the city affirmatively misled the party seeking estoppel; whether estoppel presented the only available remedy for the party; and whether the municipality enjoyed any direct benefits. See City of White Settlement v. Super Wash, Inc. , 198 S.W.3d 770, 775-76 (Tex. 2006). Even if justice requires estoppel, a city will not be estopped where doing so would impair or interfere with the city's ability to perform its governmental functions. Roberts , 543 S.W.2d at 80 ; Prasifka , 450 S.W.2d at 836. Whether the estoppel exception applies is a question of law for the court to determine. Super Wash , 198 S.W.3d at 774 ; Trudy's Tex. Star, Inc. v. City of Austin , 307 S.W.3d 894, 907 (Tex. App.-Austin 2010, no pet.).
The Property Owners rely on Roberts v. Haltom City . In Roberts , the Texas Supreme Court held a city could be estopped from enforcing a portion of its charter that required a party bringing suit against the city to file a written notice of claim within thirty days of injury. 543 S.W.2d at 80. There, the Court concluded the case presented "an appropriate instance" to recognize and apply the exception where the party seeking estoppel presented evidence that city officials made misleading statements to her that a contractor instead of the city was responsible for her injuries sustained when she fell on a street and that her claim would be "taken care of." Id. at 76-77, 80. The Court concluded there was a fact issue as to whether the city led her to believe that the filing requirement was waived. Id. at 78-80.
Unlike in Roberts , justice does not require estoppel here. This is not a case where City officials "affirmatively misled" the Property Owners. See Super Wash, 198 S.W.3d at 775 (discussing Roberts ). The Property Owners essentially fault the City for not informing them that they had the right to appeal the revocation of the property's non-conforming status to the ZBA under section 29-112(c). The Property Owners point to Ben-Amram's testimony during the prior 2014 evidentiary hearing. Ben-Amram testified that no one told him about the "six-month vacancy provision" or revocation of the property's non-conforming status until May 2010. The Property Owners do not cite, nor have we found, any authority that requires City officials to inform property owners about applicable zoning standards or how to appeal decisions under those standards. Certainly nothing in chapter 211 or section 29-212 requires the board of adjustment to inform a property owner of his right to appeal. To the contrary, we have held that "[t]hose residing in or having business dealings with a city are presumed to know its ordinances." Trail Enters., Inc. v. City of Houston , 957 S.W.2d 625, 634 (Tex. App.-Houston [14th Dist.] 1997, pet. denied) (citing Bd. of Adjustment of the City of San Antonio v. Nelson , 577 S.W.2d 783, 786 (Tex. Civ. App.-San Antonio), aff'd , 584 S.W.2d 701 (Tex. 1979) ). In other *243 words, those who own and operate apartment buildings in the City like the Property Owners are charged with constructive notice of the City's zoning standards. See ids="9948749" index="48" url="https://cite.case.law/sw2d/584/701/">id.
Ben Amram did not testify any City official told him that the City would not enforce the six-month actual-occupancy zoning standard against the property. Ben-Amram did not testify that any City official told him that he should not, or would not need to, appeal the loss of the property's non-conforming status to the ZBA or that the requirement to exhaust that decision through such an administrative appeal was waived. That no City official mentioned the exhaustion requirement to appeal the revocation decision to the ZBA does not amount to affirmatively misleading Ben-Amram that he would not be subject to such a requirement pursuant to the applicable zoning standards. See Super Wash, 198 S.W.3d at 775 (justice did not require estoppel in situation where City mistakenly issued then revoked building permit for car wash where applicable fence "[o]rdinance was a matter of public record and discoverable by Super Wash before it purchased the lot"). The Property Owners also focus on testimony by Ben-Amram that he had a conference call with "some people from the City" who informed him they would "help [him] with the process" of applying for the SUP. That City officials expressed their willingness to assist Ben-Amram with the SUP application process does not amount to affirmatively misleading him that he would not need to file an administrative appeal of the revocation decision.
Additionally, the evidence does not support that estoppel was the Property Owners' "only available remedy." See ids="8476617" index="50" url="https://cite.case.law/sw3d/198/770/#p775">id. ("Justice may require estoppel if that is the only available remedy; conversely, the existence of alternative remedies weighs strongly against the doctrine."). This is not a case where any allegedly misleading statements resulted in the permanent loss of the Property Owners' claims against the City. See ids="8476617" index="51" url="https://cite.case.law/sw3d/198/770/#p775">id. (discussing Roberts ). Another path available to remedy the loss of the property's non-conforming status was to obtain a SUP, and the Property Owners had the right to pursue their SUP application to a final decision. See ids="8476617" index="52" url="https://cite.case.law/sw3d/198/770/#p775">id. (car wash had other remedies available "such as seeking a variance or a repeal of the Ordinance").
Finally, the Property Owners do not point to any evidence that the City received any direct benefit in connection with its decision to revoke the property's non-conforming status. See ids="8476617" index="53" url="https://cite.case.law/sw3d/198/770/#p775">id. at 776. Although the Property Owners point to Ben-Amram's "several hundred thousand dollars" in expenditures to improve and repair the property at "the insistence of the City," they do not identify any portion of this amount that Ben-Amram paid to the City or otherwise demonstrate any material benefit the City received from those expenditures. See id. at 775-76 (adding commercial business to city's tax base due to erroneously issued building permit was "too attenuated" a benefit); Trudy's , 307 S.W.3d at 910 (restaurant's expenditures in pursuing off-site handicapped parking to avoid demolition of deck built without city approval did not benefit city; "if anything," city wasted municipal resources in connection with restaurant's efforts).[6]
*244 We conclude that the Property Owners have failed to present an exceptional case where justice requires estoppel. See id. at 776. We need not address the second element of the exception to the anti-estoppel rule, whether estoppel would not interfere with a governmental function. See Trudy's , 307 S.W.3d at 913.[7]
2. Business compulsion not preserved
The Property Owners next argue that the City's actions in "concealing" their right to appeal the revocation decision to the ZBA while at the same time "coercing" Ben-Amram to make costly repairs amounted to business compulsion. The City argues that the Property Owners failed to preserve this argument. The Property Owners did not raise business compulsion and only raised estoppel in their response to the City's plea to the jurisdiction.[8] To the extent that the Property Owners on appeal seek to rely on a theory of business compulsion in order to defeat the City's entitlement to dismissal for lack of jurisdiction and obtain reversal, we conclude the Property Owners waived this issue and we may not consider it. See Sandhu v. Pinglia Invs. of Tex., L.L.C. , No. 14-08-00184-CV, 2009 WL 1795032, at *6 (Tex. App.-Houston [14th Dist.] June 25, 2009, pet. denied) (mem. op.) (nonmovant who did not raise failure of consideration or estoppel in either his response or supplemental response to summary-judgment motion waived issues on appeal); Tello v. Bank One, N.A. , 218 S.W.3d 109, 118 (Tex. App.-Houston [14th Dist.] 2007, no pet.) (nonmovant must expressly present to trial court any issues defeating movant's *245 entitlement to summary judgment (citing Tex. R. Civ. P. 166a(c) ).
We therefore conclude that the trial court did not err in granting the City's second plea to the jurisdiction, and we overrule the Property Owners' first issue.
D. Reexamining our previous opinion not warranted
In their second issue, the Property Owners request that this court reconsider our prior holding "based upon errors in the prior opinion and subsequent events which confirm the futility of any further appeals or applications by" the Property Owners. In their brief, the Property Owners merely reprise their prior arguments and rely on their prior evidence and authorities. We conclude there is no reason for us to revisit our prior holding that the City was entitled to dismissal on the Property Owners' takings claims based on the City's denial of the SUP application. See Jacobs v. Jacobs , 448 S.W.3d 626, 630-31 (Tex. App.-Houston [14th Dist.] 2014, no pet.) (prior decision's determination of legal questions governed as "law of the case" where "virtually the same arguments" were asserted in current appeal).
We overrule the Property Owners' second issue.
III. CONCLUSION
Having overruled both of the Property Owners' issues, we affirm the trial court's judgment.

To its plea, the City attached: sections 29-111 and 29-112 of the City of Galveston Zoning Standards; excerpts from Ben-Amram's deposition, with exhibits; excerpts from a February 10, 2011 City Council meeting; this court's opinion in City of Galveston v. Murphy filed January 13, 2015; and City of Galveston Ordinance 11-057.

Section 29-111(a)(4) of the zoning standards provides:
(a) A NON-CONFORMING STATUS SHALL EXIST UNDER THE FOLLOWING PROVISIONS OF THIS ORDINANCE:
...
(4) When a multi-family residential use in the Historic District was in existence at time of adoption of these Zoning Standards, or prior to adoption of any amendment thereto which makes any such structure non-conforming, provided, that there has not been a discontinuance of actual occupancy as a multiple-family use for any consecutive period of time of six (6) months or longer.

Section 29-112(c) provides:
Appeal Process: Appeals to the Board can be taken by any person aggrieved or by an officer, department or board of the municipality affected by any decision of the Building Official. Such appeal shall be taken within a reasonable time after the decision has been rendered by the administrative officer, by filing with the officer from whom the appeal is taken and with the Board, a notice of appeal specifying the grounds thereof. The officer from whom the appeal is taken shall forthwith transmit to the Board all the papers constituting the record upon which the action appealed was taken.

Section 29-112(o) provides:
Appeal from Decision of Board: Any person aggrieved by any decision of the Board, or any officer, department or other Board of the City, may appeal the decision or action of the Board by filing a petition for the same in a court of competent jurisdiction, setting forth that such decision is illegal in whole or in part, and specifying the grounds for the alleged illegality. Such petition shall be filed with the Court within ten (10) days from the day the Board renders its decision, and not thereafter. The time period set forth herein shall be deemed jurisdictional.

That same day, the trial court denied the Property Owners' motion to strike the City's plea. The Property Owners do not challenge this order on appeal.

In their brief, the Property Owners also rely on City of Fredericksburg v. Bopp , 126 S.W.3d 218 (Tex. App.-San Antonio 2003, no pet.). Bopp is unpersuasive. Bopp involved whether a restaurant violated an ordinance that restricted the area of maximum total signage. Id. at 219-20. The appellate court concluded the city was estopped from seeking a permanent injunction where the trial court expressly found that the existing pole sign was grandfathered when the property was annexed by the city, the city issued a valid permit for the restaurant to erect a wall sign, the restaurant relied on the permit, and the city never revoked the permit. Id. at 219-24. Unlike here, Bopp involved affirmatively misleading conduct by the city and reasonable reliance by the restaurant.
The Property Owners also rely on Houston Lighting & Power Co. v. City of Wharton , 101 S.W.3d 633 (Tex. App.-Houston [1st Dist.] 2003, pet. denied). There, several cities sued HL&P to recover unpaid fees under a franchise-fee agreement. See id. at 637. The appellate court held that the defense of laches applied to bar the cities' claims under circumstances where the cities had simply accepted the payments without objection for several decades. Id. at 639. This case does not involve any comparable conduct by the City.
In their reply brief, the Property Owners rely on Trudy's . Trudy's , however, does not support their position. In Trudy's , there was no evidence that the city intended to affirmatively mislead the restaurant or that the city received any direct benefit with regard to its decision not to permit any off-site handicapped parking. Id. at 910. In addition, the restaurant's own conduct in constructing its deck without obtaining city approval did not favor finding estoppel. Id. at 911-12. Even considering "economic harm" to the restaurant in its pursuit of the off-site parking and the restaurant's reasonable reliance on the city's initial decision to permit such parking, the court concluded the restaurant had not raised a fact issue that this was an exceptional case where justice required estoppel. Id. at 912-13.

In any event, the Property Owners do not explain or present any specific evidence regarding this element of estoppel. See Super Wash , 198 S.W.3d at 777-78 ; see also Tello v. Bank One, N.A. , 218 S.W.3d 109, 114 (Tex. App.-Houston [14th Dist.] 2007, no pet.) ("If, as here, the non-movant relies on an affirmative defense to oppose the summary judgment motion, he must provide sufficient summary judgment evidence to create a fact issue on each element of the defense.").

The Property Owners' written response to the City's plea in its entirety consisted of the following:
Without waiving or superseding any other pleading or response, but supplementing the same, Plaintiffs would show that Defendant the City of Galveston is estopped to assert or claim non-compliance with resort to the Zoning Board of Adjustments. See Roberts v. Haltom City , 543 S.W.2d 75, 79-80 (Tex. 1976).
The Property Owners attached a copy of Roberts to the response.