**Reversed and Rendered and Majority and Concurring Opinions filed October 27, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00778-CV

---

### CITY OF DICKINSON, TEXAS, Appellant

### V.

### LARRY STEFAN, Appellee

---

**On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Cause No. 17-CV-1494**

---

## MAJORITY OPINION

Appellant/defendant City of Dickinson, Texas appeals the trial court's denial of its plea to the jurisdiction, arguing that the trial court lacks jurisdiction over appellee/plaintiff Larry Stefan's claims because Stefan failed to exhaust his administrative remedies. Concluding that the trial court lacks jurisdiction, we reverse and render judgment dismissing Stefan's claims.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In December of 1999, Stefan purchased a home on approximately 6.75 acres of land located at 4520 Plantation Bend in Dickinson, Texas (the "Property"). The Property is located in a residential neighborhood on Dickinson Bayou. In addition to living with his wife on the Property, Stefan operates a computer business, Data Functions, from his home. He started Data Functions in 1985, and has owned and operated it since that time.

About a year after Stefan purchased the home, he allowed a women's group from his church to hold a Christmas reception on the Property. Stefan received no money for allowing the Property to be used for the event, but Stefan says that his church gave him a receipt showing a $2,000 donation that Stefan was able to utilize on his tax return.

The following summer, the City adopted Chapter 18 of the Code of Ordinances of the City of Dickinson, Texas, entitled "Zoning" (the "Zoning Ordinance"). Under the Zoning Ordinance, the Property is located in the Conventional Residential District. The Zoning Ordinance does not, as a matter of right, allow wedding event venues, or any similar commercial assembly uses, to be located in the Conventional Residential District. *Code of Ordinances, Dickinson, Tex.*, ch. 18, art. IV, § 18-50(a). In addition to allowing single-family residential uses, the Zoning Ordinance permits a number of other uses as a matter of right, including home occupations incidental to a residential permitted use and private recreational facilities owned and operated by or on behalf of a residential subdivision or development. *Id.*

The Zoning Ordinance provides that a pre-existing nonconforming use may continue, subject to the terms of Article X of the Zoning Ordinance. *Id.* at art. X, § 18-105. A pre-existing nonconforming use under the Zoning Ordinance includes

2

an existing use that is not in conformance with the regulations of the zoning district in which it is located but lawfully existed when the City adopted the Zoning Ordinance. *Id*. at art. X, § 18-107. The City does not contest Stefan's operating of Data Functions on the Property before the City adopted the Zoning Ordinance.

The city administrator must appoint a zoning official, or designee, whose duties include the administration and enforcement of the regulations in the Zoning Ordinance (the "Zoning Official"). *Id*. at art. III, § 18-13. Under the Zoning Ordinance, the Zoning Official has a duty and responsibility to maintain all records related to the enforcement and procedures of the Zoning Ordinance. *Id*. The owner of a lot upon which a nonconforming use exists must register the nonconforming use with the Zoning Official within one year after the date the City adopted the Zoning Ordinance (July 24, 2001), or, as applicable, within one year after the adoption of any amendment to the Zoning Ordinance that makes the use nonconforming. *Id*. at art. X, § 18-115. If an owner registers a nonconforming use, the owner shall be issued a "certificate of occupancy nonconforming," with a brief description of the nonconformity, which shall thereafter be considered as evidence of the lawful existence of the nonconforming use ("Certificate of Occupancy Nonconforming"). *Id*. The Zoning Ordinance requires that the Zoning Official maintain on file for the City all certificates of occupancy nonconforming. *Id*. If an owner does not register a nonconforming use, thereafter the City must require proof by the owner that the use was lawfully existing on July 24, 2001, or at the time of the adoption of any applicable amendment to the Zoning Ordinance, or the nonconforming use shall be deemed unlawful and a violation of the Zoning Ordinance. *Id*.

Establishing a pre-existing nonconforming use allows a property owner to continue the same nonconforming use after the City adopted the Zoning

3

Ordinance, but no more. *Id.* at art. X., § 18-110(b). In other words, the property owner cannot expand the nonconforming use by building structures or other improvements that were not in existence before the City adopted the Zoning Ordinance. *Id.*

In June 2002, Stefan filled out a City of Dickinson form entitled "Nonconforming Use Registration." On the form, Stefan handwrote that he had been using the Property as "business & multi-family" before adoption of the Zoning Ordinance. Stefan did not specify the business use to which he referred. Stefan did not state whether he was referring to the operation of his computer business, Data Functions, or some other business. Stefan did not write "events," "wedding venue," "event center," or anything else that would indicate he had been using the Property for events. Dani M. Olson signed the form in June 2002. Stefan received a copy of the signed document (the "Registration Document") in 2002, and he kept that copy. Stefan asserts that Dani Olson was the Zoning Official for the City at the time, and we presume this statement to be true. The City conceded in the trial court that the Registration Document is authentic. Zachary Meadows, the City's Zoning Official at the time of the proceedings in the trial court, testified that he could not find the Registration Document in the City's records but that his failure to find the Registration Document does not "validate or invalidate the possible use of the [P]roperty." Stefan has not produced a Certificate of Occupancy Nonconforming, nor has Stefan asserted that the City ever issued one.

In February 2017, the City received a complaint from one of the residents on Plantation Bend about a pavilion that was under construction in Stefan's front yard. Upon investigation, Meadows determined that Stefan had not obtained a building permit for the pavilion, so he visited the Property with the City's building official and fire marshal. When he arrived at the Property, Meadows saw a large pavilion

4

under construction, and a man who was working on the construction of the pavilion. The man spoke with Stefan, and Stefan came out of his house to talk to Meadows. Meadows tried to figure out the use of the Property because Meadows thought that the construction of a structure as big as the pavilion would not be for residential use. Meadows asked Stefan to explain why Stefan was having the pavilion built, and Stefan stated that he had an approval to have a business on the Property and that he hosted weddings on the Property. Stefan went into his house and returned with a copy of the Registration Document. Meadows told Stefan that Meadows would have to do some research into the Registration Document and the Property and that after doing so, he would contact Stefan.

Meadows could not find any records regarding a nonconforming use on the Property. Meadows called Stefan on the phone and told him that even if he established a nonconforming use on the Property, the pavilion was an expansion of that use. *See id.* at art. X., § 18-110(b). Meadows told Stefan that the only way to allow the construction of the pavilion to continue would be for Stefan to obtain a specific use permit. The Zoning Ordinance provides that the Dickinson City Council, after receiving the recommendation of the Planning and Zoning Commission (the "Commission"), by ordinance may grant a specific use permit for certain uses in locations and zoning districts in which the uses are not otherwise permitted by the Zoning Ordinance. *Id.* at art. III., § 18-14; *id*. at art. V., § 18-57. The Zoning Ordinance requires a specific use permit before property in the Conventional Residential District may be used for a "Special Event Center on five (5) or more acres." *Id.* at art. V., § 18-58. A "special event center," as that term is used in the Zoning Ordinance, is a "private facility available for lease, including the grounds and buildings, whose primary purpose is to host conferences, meetings, receptions, reunions, weddings, or any other gathering (formal or informal) that is temporary in nature" ("Special Event Center").

5

Stefan submitted a formal request to Meadows, asking Meadows to issue a Certificate of Occupancy Nonconforming under section 18-115 of the Zoning Ordinance. *Id*. at art. X, § 18-115. Stefan asserted that he had been operating a Special Event Center on the Property since December 16, 2000. In support of this request, Stefan submitted evidence of the Christmas reception on the Property held on December 16, 2000.

On October 18, 2017, Meadows sent Stefan a letter denying Stefan's request for a Certificate of Occupancy Nonconforming. Meadows stated that, after reviewing all of the documentation Stefan provided, Meadows determined that Stefan is not eligible for issuance of a Certificate of Occupancy Nonconforming for the use of any portion of the Property as a Special Event Center. Meadows stated that the only evidence Stefan presented concerning the use of the Property as a Special Event Center was evidence of the December 16, 2000 Christmas reception, which, by Stefan's admission, did not involve the exchange of money for the use of the Property. Meadows also stated that Stefan had not provided any evidence to establish that he continued to use the Property for gatherings after December 16, 2000. Meadows noted that a nonconforming use of land or a structure that is discontinued or remains vacant for a continuous period of six months is presumed to be abandoned and shall not thereafter be reestablished or resumed. *See id*. at art. X, § 18-110. Meadows denied Stefan's request for a Certificate of Occupancy Nonconforming and demanded that Stefan cease any use of the Property as a Special Event Center. Meadows stated that Stefan may not use the Property for any purpose other than the uses permitted in a Conventional Residential District. Meadows warned Stefan that if Stefan continued to use the Property in an unauthorized manner, the City would issue citations for violation of the Zoning Ordinance. Meadows told Stefan that he had the right to appeal

6

Meadows's decision to the City's board of adjustment ("Board of Adjustment") and that Stefan also had the right to apply for a specific use permit for use of the Property as a Special Event Center. *See id.* at art. III., § 18-37; *id.* at art. V., § 18-57. Meadows said that until the use of the Property as a Special Event Center is otherwise lawfully permitted, any further use of the Property for this purpose is prohibited by the Zoning Ordinance.

Stefan applied for a specific use permit and attended a meeting of the Commission at which the Commission considered whether to recommend that the City Council approve Stefan's application. *See id.* at art. V., § 18-57. By a unanimous vote, the Commission recommended denial of Stefan's application. Despite this recommendation, the City Council still had the authority to grant Stefan's application for a specific use permit. *See id.* Though the City Council planned to consider Stefan's application at a meeting, just before that meeting Stefan asked that his application not be considered at the meeting, and since then Stefan has not asked the City Council to consider his application. Honoring this request, the City Council has not considered Stefan's application for a specific use permit.

Stefan appealed Meadows's decision to the Board of Adjustment. After considering Stefan's appeal and the evidence presented, the Board of Adjustment issued an "Order Denying Appeal," in which the Board of Adjustment stated that Meadows's decision stands and only those uses permitted in a Conventional Residential District are allowed on the Property. The Board of Adjustment's order was filed on December 12, 2017. Two days later, Stefan filed this lawsuit against the City.

In his live petition, Stefan makes the following allegations:

- Stefan bought the Property in December 1999, with the intent to use

7

the Property "for special events center/weddings."

- The Registration Document was approved on June 17, 2002.

- Stefan has used the Property as a "Special Event Center/Wedding Chapel."

- The first special event occurred on December 16, 2000.

- Since December 16, 2000, Stefan has continually used the Property for a "Special Event Center/Wedding Chapel" without interruption until 2017, when the City began a course of conduct to close Stefan's business.

- Stefan did not apply for a building permit for the pavilion because he thought he was "grandfathered" based on the Registration Document.

- Stefan requested that Meadows issue a Certificate of Occupancy Nonconforming, and Meadows denied the application.

- Stefan appealed Meadows's decision to the Board of Adjustment, which denied Stefan's appeal.

Stefan asked the trial court for a declaratory judgment, declaring the Property "to be 'Grand-fathered' from the City of Dickinson zoning law." Stefan also asserted an inverse-condemnation claim under article I, section 17 of the Texas Constitution. Stefan sought a temporary injunction, a permanent injunction, and reasonable and necessary attorney's fees.

The City filed a plea to the jurisdiction, attaching evidence, and asserting that the trial court lacked jurisdiction because Stefan failed to exhaust his administrative remedies by failing to seek judicial review of the Board of Adjustment's decision under Texas Local Government Code section 211.011. The trial court denied the City's plea to the jurisdiction, and the City timely filed this interlocutory appeal.

## II. ISSUES AND ANALYSIS

Though Stefan generally refers to his claims as a declaratory-judgment claim and a takings claim, Stefan states on appeal that he has "presented . . . a Chapter

245 claim for declaratory relief." *See* Tex. Loc. Gov't Code Ann. § 245.001, *et seq*. (West, Westlaw through 2019 R.S.). Stefan also states that chapter 245 of the Local Government Code authorizes declaratory relief to enforce a vested right, and Stefan indicates that chapter 245 authorizes his declaratory-judgment claim. Liberally construing Stefan's appellate brief, we conclude that Stefan argues that he pleaded an independent claim for declaratory relief under chapter 245. *See* Tex. Loc. Gov't Code Ann. § 245.006. (West, Westlaw through 2019 R.S.) (stating "[t]his chapter may be enforced only through mandamus or declaratory or injunctive relief"). So, we begin by addressing whether Stefan pleaded this claim in the trial court.

**A. Did Stefan plead a claim for declaratory relief under chapter 245 of the Local Government Code?**

The Local Government Code defines key terms relevant to our analysis of Stefan's pleadings and our assessment of whether they contain a chapter 245 claim for declaratory relief. Under chapter 245, "'[p]ermit' means a license, certificate, approval, registration, consent, permit, contract or other agreement for construction related to, or provision of, service from a water or wastewater utility owned, operated, or controlled by a regulatory agency, or other form of authorization required by law, rule, regulation, order, or ordinance that a person must obtain to perform an action or initiate, continue, or complete a project for which the permit is sought." Tex. Loc. Gov't Code Ann. § 245.001(1) (West, Westlaw through 2019 R.S.). According to the same chapter, "'[p]roject' means an endeavor over which a regulatory agency exerts its jurisdiction and for which one or more permits are required to initiate, continue, or complete the endeavor." Tex. Loc. Gov't Code Ann. § 245.001(1) (West, Westlaw through 2019 R.S.). The operation of an ongoing business is not a "project" within the meaning of chapter 245. *See Anderton v. City of Cedar Hill*, 447 S.W.3d 84, 95–96 (Tex. App.—Dallas 2014,

9

pet. denied). Chapter 245 requires that "[e]ach regulatory agency shall consider the approval, disapproval, or conditional approval of an application for a permit solely on the basis of any orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time: (1) the original application for the permit is filed for review for any purpose, including review for administrative completeness; or (2) a plan for development of real property or plat application is filed with a regulatory agency." Tex. Loc. Gov't Code Ann. § 245.002(a) (West, Westlaw through 2019 R.S.). Rights to which a permit applicant is entitled under chapter 245 "accrue on the filing of an original application or plan for development or plat application that gives the regulatory agency *fair notice of the project and the nature of the permit sought*." Tex. Loc. Gov't Code Ann. § 245.002(a-1) (emphasis added). If a series of permits is required for a project, the orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time the original application for the first permit in that series is filed shall be the sole basis for consideration of all subsequent permits required for the project's completion. Tex. Loc. Gov't Code Ann. § 245.002(b). All permits required for the project are considered to be a single series of permits. *Id.* Chapter 245 may be enforced through declaratory relief. *See* Tex. Loc. Gov't Code Ann. § 245.006.

In his live pleading, Stefan does not cite chapter 245 or any of its sections. Though Stefan seeks declaratory relief, he does not invoke chapter 245 or point to it as a basis for any relief. Parties usually seek declaratory relief under the Texas Declaratory Judgments Act. *See* Tex. Civ Prac. & Rem. Code Ann. § 37.001, *et seq.* (West, Westlaw through 2019 R.S.). Stefan does not allege in his pleading that he has a vested right based on the Registration Document. Stefan does not mention the word "project" or assert that his claims involve any project. Stefan

10

does not assert in his live pleading that any entity considered his application for a permit based on orders, regulations, ordinances, rules, expiration dates, or other requirements that took effect after Stefan filed the original application for the permit. Nothing in the pleading suggests Stefan seeks relief under chapter 245.

Pleadings must give reasonable notice of the claims asserted. *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354–55 (Tex. 1995). The City did not specially except to Stefan's live pleading. As a reviewing court, we are to liberally construe the petition to contain any claims that reasonably may be inferred from the specific language used in the petition and uphold the petition as to those claims, even if an element of a claim is not specifically alleged. *See id.* In making the assessment, we must look to the wording of the pleading; we cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain. *Moneyhon v. Moneyhon,* 278 S.W.3d 874, 878 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Applying this standard, we cannot conclude that Stefan pleaded a claim under chapter 245 to enforce that chapter by declaratory relief. *See* Tex. Loc. Gov't Code Ann. § 245.006; *Lenox Barbeque and Catering, Inc. v. Metro. Transit Auth. of Harris County*, 489 S.W.3d 529, 536 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Moneyhon*, 278 S.W.3d at 878. Liberal construction can be used to amplify a pleading but not to create a claim. Stefan's pleading, liberally construed, contains no chapter 245 claim for declaratory relief.

**B. Did Stefan seek judicial review of the Board of Adjustment's decision under Local Government Code section 211.011?**

Under Local Government Code section 211.011, entitled "Judicial Review of Board Decision," Stefan, a person aggrieved by a decision of the Board of Adjustment, had the statutory right to get judicial review of the Board of

11

Adjustment's decision by presenting to a district court, county court, or county court at law a verified petition for writ of certiorari. *See* Tex. Loc. Gov't Code Ann. § 211.011(a) (West, Westlaw through 2019 R.S.). On presentation of such a petition, the court may grant a writ of certiorari directed to the Board of Adjustment to review the Board of Adjustment's decision. *See* Tex. Loc. Gov't Code Ann. § 211.011(c). The court may reverse or affirm, in whole or in part, or modify the decision that is appealed. *See* Tex. Loc. Gov't Code Ann. § 211.011(f). If Stefan had sought review under section 211.011, the district court would sit only as a court of review of the Board of Adjustment's decision. *See City of Dallas v. Vanesko*, 189 S.W.3d 769, 771 (Tex. 2006). In such a proceeding, the only issue for the district court to determine would be the legality of the Board of Adjustment's decision, and Stefan would have the burden of establishing illegality by a "very clear showing" that the Board of Adjustment abused its discretion. *See id.*; *Christopher Columbus Street Market, LLC v. Zoning Board of Adjustments of the City of Galveston*, 302 S.W.3d 408, 416 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A reviewing court in a section 211.011 proceeding may not put itself in the position of the Board of Adjustment and substitute its findings for those of the Board of Adjustment, even if the overwhelming preponderance of the evidence goes against the Board of Adjustment's decision. *See Vanesko*, 189 S.W.3d at 771; *Christopher Columbus Street Market, LLC*, 302 S.W.3d at 416. A party attacking the legality of the Board of Adjustment's decision must establish that the Board of Adjustment could have reached but one decision, and not the decision it made. *See Vanesko*, 189 S.W.3d at 771; *Christopher Columbus Street Market, LLC*, 302 S.W.3d at 416.

In his original petition, which is Stefan's live pleading in this case, Stefan sought declaratory relief and asserted that he has an inverse-condemnation or

12

takings claim under the Texas Constitution. Looking to Stefan's live pleading for contextual indicia of the claims asserted, we note the following:

- Stefan does not cite section 211.011 of the Local Government Code.

- Stefan does not ask the trial court to grant a writ of certiorari.

- Stefan does not ask the trial court to review the Board of Adjustment's decision.

- Stefan does not state that he is appealing the Board of Adjustment's decision.

- Stefan does not state that he filed his petition within ten days after the date the Board of Adjustment's decision was filed in its office.

- Stefan does not state that the Board of Adjustment's decision is illegal in whole or in part.

- Stefan does not assert that the Board of Adjustment abused its discretion.

- Stefan does not ask the trial court to reverse or modify the Board of Adjustment's decision.

Even under a liberal construction of Stefan's live pleading, Stefan did not seek judicial review of the Board of Adjustment's decision under section 211.011. *See* Tex. Loc. Gov't Code Ann. § 211.011; *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 613–614 (Tex. App.—Texarkana 2008, no pet.) (concluding that the plaintiff's petition seeking declaratory relief inconsistent with the board of adjustment's decision did not seek judicial review of the board's decision under Local Government Code section 211.011). Rather than challenge the Board of Adjustment's decision under the deferential standard of review applicable to judicial review under section 211.011, Stefan sought declaratory relief inconsistent with the Board of Adjustment's decision in an original proceeding. *See* Tex. Loc. Gov't Code Ann. § 211.011; *Lamar Corp.*, 270 S.W.3d at 613–614. Though Stefan filed his verified original petition within ten days after the date on which the Board of Adjustment filed its decision, even liberally construing the petition, we

conclude Stefan did not seek judicial review of the Board of Adjustment's decision in the trial court. *See* Tex. Loc. Gov't Code Ann. § 211.011; *Lamar Corp.*, 270 S.W.3d at 613–614.

In its plea to the jurisdiction, the City asserted that the trial court lacked jurisdiction because Stefan had failed to seek judicial review of the Board of Adjustment's decision under Texas Local Government Code section 211.011. In his response to the City's jurisdictional plea, Stefan acknowledged that the City asserted the trial court lacked jurisdiction based on "Stefan's failure to appeal the decision of the City's Board of Adjustment ("BOA") within 10 days." Stefan did not dispute that he had not sought judicial review of the Board of Adjustment's decision under Texas Local Government Code section 211.011, and he tacitly recognized that he had failed to do so. Stefan did not argue that his petition suffices to seek this relief, nor did he amend his petition to add a request for this relief. Likewise, on appeal Stefan has not asserted that he is seeking seek judicial review of the Board of Adjustment's decision under Texas Local Government Code section 211.011 or that his petition suffices to seek this relief. In his appellate brief, Stefan states: "Stefan brings claims against the City of Dickinson for declaratory relief and takings claims under the state constitution. The City challenges jurisdiction with respect to Stefan's declaratory judgment and takings claims for failure to timely appeal the City Board of Adjustment determination and that Stefan did not exhaust his administrative remedies regarding nonconforming use." The statements of Stefan and his counsel in the trial court and on appeal show that Stefan is not seeking judicial review of the Board of Adjustment's decision under Texas Local Government Code section 211.011.

Precedent from the Supreme Court of Texas and this court does not compel the conclusion that under the record in this case Stefan sought judicial review of

14

the Board of Adjustment's decision under section 211.011. In *Tellez v. City of Socorro*, a plaintiff sought judicial review of a zoning board of adjustment's decision under section 211.011, but the plaintiff improperly sued the city rather than the zoning board of adjustment. *See* 226 S.W.3d 413, 414 (Tex. 2007) (per curiam). In addition, the plaintiff did not specify how the board's decision was illegal. *See id*. After the trial court affirmed the board's decision, the plaintiff appealed, and the court of appeals dismissed sua sponte for lack of jurisdiction. *See id*. The Supreme Court of Texas held that the plaintiff's failure to specify how the board's decision was illegal and the failure to sue the board were non-jurisdictional defects that the city waived by not raising them in the trial court. *See id*. In today's case, though Stefan failed to specify how the Board of Adjustment's decision was illegal and also failed to sue the Board of Adjustment, we have not relied on either failure in our analysis. Stefan has not sought judicial review under section 211.011 in his petition or claimed that he has done so. In addition, the City pointed out in its plea to the jurisdiction that Stefan had failed to seek judicial review under section 211.011; yet Stefan did not amend his pleading to seek this relief. The *Tellez* case is not on point.

In *Davis v. Zoning Board of Adjustment of the City of La Porte*, the Supreme Court of Texas, in a per curiam opinion, held that the trial court did not lose jurisdiction over the plaintiffs' requests for judicial review under section 211.011 of the Local Government Code merely because the plaintiffs failed to serve the writ of certiorari ordered by the trial court. *See* 865 S.W.2d 941, 942 (Tex. 1993) (per curiam). The *Davis* court said "[o]nce a party files a petition within ten (10) days after a zoning board decision, the court has subject matter jurisdiction to hear and determine a claim that a board of adjustment acted illegally. The writ of certiorari is the method by which the court conducts its review. . ." *Id*. In the trial

15

court petition in *Davis*, the plaintiffs sought review of the board of adjustment's decision under section 211.011 of the Local Government Code; the *Davis* court did not hold that any petition filed within ten days of a board of adjustment's decision suffices to seek relief under section 211.011 of the Local Government Code, even if the petition, under a liberal construction, contains no such claim and the plaintiffs do not assert that they have pleaded such a claim. *See id.*

In *Scott*, the plaintiffs challenged in their petition a board of adjustment's decision, asserting that the board abused its discretion in its decision authorizing a variance. *See Scott v. Bd. of Adjustment*, 393 S.W.2d 837, 838 (Tex. Civ. App.—Corpus Christi 1965), *rev'd*, 405 S.W.2d 55 (Tex. 1966). In *Scott*, the defendants did not dispute that the plaintiffs sought judicial review of the board of adjustment's decision under the predecessor statute to Texas Local Government Code section 211.011, and the appellate courts addressed whether the statute sufficed to give the plaintiffs standing or whether the plaintiffs had to satisfy common-law standing requirements. *See Scott*, 405 S.W.2d at 55–57; *Scott*, 393 S.W.2d at 838–39. In holding that the plaintiffs had standing under the statute to seek this review and that the plaintiffs did not have to show common-law standing, the Supreme Court of Texas did not review the plaintiffs' petition to see if the plaintiffs had sought judicial review of the board of adjustment's decision under the predecessor statute to section 211.011. *See Scott*, 405 S.W.2d at 55–57. The *Scott* court did not hold or state that a request for injunctive relief contrary to a board of adjustment's decision, by itself, constitutes a request for judicial review of the board of adjustment's decision under the predecessor statute to section 211.011. *See id.* The *Scott* case is not on point.

In *City of Houston v. Carlson*, the appellees asserted that they sought to appeal under the applicable statute, and this court noted that it already had

determined that the appellees' pleading sufficed to seek this appellate relief in the trial court. *See City of Houston v. Carlson*, 393 S.W.3d 350, 355 n.5 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The *Carlson* court held that the appellees' failure to verify their petition did not amount to a jurisdictional defect, an issue not present in today's case. *See id*. at 255–57. Likewise, in *Teague v. City of Jacksboro*, the plaintiff, unlike Stefan, pleaded in his petition for judicial review under the applicable statute. *See* 190 S.W.3d 813, 815 (Tex. App.—Fort Worth 2006, pet. denied). In any case, *Teague*, a case out of the Second Court of Appeals, does not bind this court. *See Chrismon v. Brown*, 246 S.W.3d 102, 111 n.8 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

In sum, a liberal construction cannot create a claim Stefan's pleading does not contain, and we cannot conclude that Stefan sought judicial review of the Board of Adjustment's decision under section 211.011. *See* Tex. Loc. Gov't Code Ann. § 211.011; *Lamar Corp.*, 270 S.W.3d at 613–614; *Lenox Barbeque and Catering, Inc.*, 489 S.W.3d at 536; *Moneyhon*, 278 S.W.3d at 878. Thus, we disagree with our concurring colleague's conclusion that Stefan's petition suffices to seek this judicial review. *See post* at 1–2. Stefan pleaded a declaratory-judgment claim, and we presume for the sake of argument that he pleaded an inverse-condemnation or takings claim. *See* Tex. Civ Prac. & Rem. Code Ann. § 37.001, *et seq*.

**C. Does the trial court lack jurisdiction over Stefan's declaratory-judgment claim because Stefan failed to exhaust his administrative remedies?**

In its first issue, the City asserts that the trial court lacks jurisdiction over Stefan's declaratory-judgment claim because Stefan failed to exhaust his administrative remedies by filing a petition for writ of certiorari under Local Government Code section 211.011 to obtain judicial review of the Board of

Adjustment's decision.

In his declaratory-judgment claim, Stefan seeks a declaration that the Property is "'Grand-fathered' from the City of Dickinson zoning law." Under a liberal construction of this pleading, Stefan seeks a declaration that his use of the Property as a "Special Event Center/Wedding Chapel" is a lawful, nonconforming use that does not violate the Zoning Ordinance because this use lawfully existed on July 24, 2001, and has continued to the present. *Code of Ordinances, Dickinson, Tex.*, ch. 18, at art. X, § 18-107. On appeal, Stefan asserts that he seeks a determination of the existence and extent of his alleged vested right to use the Property for weddings, receptions, and other events based on the Registration Document, which he received pursuant to section 18.113 of the Zoning Ordinance.

Stefan pursued his administrative remedies by asking Meadows to issue a Certificate of Occupancy Nonconforming. Meadows determined that Stefan is not eligible for issuance of a Certificate of Occupancy Nonconforming for the use of any portion of the Property as a Special Event Center. Meadows indicated that he thought Stefan had not proven that Stefan was using the Property for a Special Event Center on July 24, 2001, and that Stefan had continued that use to the present without abandonment. Meadows determined that Stefan may not use the Property for any other purpose than the uses permitted in a Conventional Residential District. Stefan unsuccessfully appealed Meadows's ruling to the Board of Adjustment.

Under Local Government Code section 211.011, Stefan had the statutory right to obtain judicial review of the Board of Adjustment's decision. *See* Tex. Loc. Gov't Code Ann. § 211.011(a). The deadline for Stefan to have filed the petition for writ of certiorari fell ten days after the date on which the Board of Adjustment filed its decision. *See* Tex. Loc. Gov't Code Ann. § 211.011(b). This

18

deadline passed in December 2017. As discussed in the previous section, Stefan has not filed a petition seeking review of the Board of Adjustment's decision under Local Government Code section 211.011. Instead, Stefan filed a petition seeking declaratory relief. *See Lamar Corp.*, 270 S.W.3d at 613–614.

The exhaustion-of-administrative-remedies rule requires that a plaintiff pursue all available remedies within the administrative process before seeking judicial relief. *Murphy v. The City of Galveston*, 557 S.W.3d 235, 241 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). The failure to do so deprives the trial court of jurisdiction to decide the case. *Id.* at 241–44. The administrative remedies available under section 211 of the Local Government Code generally must be exhausted before a party may seek judicial review of a determination made by an administrative official. *See* Tex. Loc. Gov't Code Ann. § 211.001, *et seq.* (West, Westlaw through 2019 R.S.); *Murphy*, 557 S.W.3d at 241; *see also City of San Antonio v. El Dorado Amusement Co., Inc.*, 195 S.W.3d 238, 250 (Tex. App.—San Antonio 2006, pet. denied) (stating that "[t]he administrative remedies provided by the Local Government Code must be exhausted before matters regarding non-conforming uses may be brought before the courts."). The review of the Board of Adjustment's decision under Local Government Code section 211.011 is an administrative remedy that must be exhausted before a decision by the Board of Adjustment may be brought before the courts. *See Lazarides v. Farris*, 367 S.W.3d 788, 799 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Lamar Corp.*, 270 S.W.3d at 613–614; *El Dorado Amusement Co.,* 195 S.W.3d at 249–50. By not seeking review of the Board of Adjustment's decision under Local Government Code section 211.011, Stefan failed to exhaust his administrative remedies. *See Lazarides*, 367 S.W.3d at 799; *Lamar Corp.*, 270 S.W.3d at 613–614; *City of San Antonio*, 195 S.W.3d at 249–50. To the extent Stefan asserts

entitlement to a specific use permit, Stefan did not exhaust his administrative remedies by obtaining a ruling from the City Council on an application for a specific use permit. *See Code of Ordinances, Dickinson, Tex.*, ch. 18, at art. V., at §§ 18-57, 18-58; *Murphy*, 557 S.W.3d at 241–44; *Lazarides*, 367 S.W.3d at 799; *Winn v. City of Irving*, 770 S.W.2d 10, 11 (Tex. App.—Dallas 1989, no writ).

On appeal, Stefan states that the Board of Adjustment heard and denied his appeal, finding that Stefan did not have sufficient proof of a nonconforming use of the Property. Stefan does not assert that he exhausted his administrative remedies or that he is excused from doing so. Stefan asserts the following arguments:

- The trial court has jurisdiction over Stefan's declaratory-judgment claim because the parties dispute whether Stefan has a vested right to use the Property for weddings, receptions, and other events.

- The City has no legitimate reason for denying Stefan's right to continue his lawful business of using the Property for weddings, receptions, and other events as authorized by the City in the Registration Document because the City relied upon rules, ordinances, or requirements that did not exist when Stefan's rights vested or on rules that do not apply to a recognized nonconforming use registration.

- Although required to do so, the Zoning Official did not maintain the record of the Registration Document.

- The Registration Document gave Stefan the right to use the Property for weddings, receptions, and other events.

- In denying Stefan's request for a Certificate of Occupancy Nonconforming, Meadows violated section 18.115 of the Zoning Ordinance.

- In a memorandum to the Planning and Zoning Commission, Meadows allegedly recognized Stefan's use of the Property for weddings, receptions, and other events before the adoption of the Zoning Ordinance on July 24, 2001.

- This case involves various other justiciable controversies regarding the merits of Stefan's contentions.

20

These arguments go to the merits of Stefan's contentions, and none of them provides a basis for excusing Stefan's failure to exhaust administrative remedies. If the trial court and this court lack subject-matter jurisdiction over Stefan's declaratory-judgment claim due to Stefan's failure to exhaust administrative remedies, neither court may address any of these merits arguments. *See Curry v. Harris County Appraisal Dist.*, 434 S.W.3d 815, 820 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Stefan asserts that Meadows had no authority to reject Stefan's vested right of the nonconforming use of the Property for weddings, receptions, and other events by requiring Stefan to apply for a specific use permit. We presume, without deciding, that such a lack of authority would excuse Stefan's failure to exhaust administrative remedies. Stefan claims on appeal that he has a vested right based on the Registration Document. The City has not contested the authenticity of that document or disputed Stefan's assertion that the person who signed and approved it was the City's Zoning Official at the time of signature in June 2002. We presume that the Registration Document is authentic and that the City's Zoning Official at the time approved it. Nonetheless, Stefan describes, in pertinent part, the nonconforming use only as "business." The Registration Document recites that "[d]ocumentation that proves the property was used in the same manner prior to July 24, 2001 is required." Yet, the record contains no evidence showing what, if any, documents Stefan submitted with the Registration Document. He may have submitted documents showing that he had operated his computer business on the Property since before July 24, 2001. Stefan may have submitted documents allegedly showing that he had been operating a business of hosting weddings, receptions, and other events on the Property since before July 24, 2001. Or, Stefan may have submitted no documents. The record contains no evidence that the City

21

ever issued Stefan a Certificate of Occupancy Nonconforming, which, according to the Zoning Ordinance, would describe the nonconforming use and serve as evidence of the lawful existence of the nonconforming use. *See Code of Ordinances, Dickinson, Tex.*, ch. 18, at art. X., at § 18-115. The Zoning Ordinance does not state that the registration of the nonconforming use serves as evidence of the lawful existence of the nonconforming use; instead, the Zoning Ordinance says that the Certificate of Occupancy Nonconforming evidences the lawful existence of the nonconforming use. *See id.*

Under the Zoning Ordinance, Meadows's duties and responsibilities as the Zoning Official include, but are not limited to, accepting and processing all submitted applications for specific use permits, serving as the enforcement officer to ensure compliance with the Zoning Ordinance, and performing other duties as necessary and appropriate to uphold the provisions of the Zoning Ordinance. *Id.* at art. III, § 18-13. Even presuming that a prior Zoning Official approved the registration by Stefan of a nonconforming use of "business," we conclude that Meadows, as the current Zoning Official, had authority to determine (1) whether the June 2002 registration constituted a registration of a nonconforming use of the Property for weddings, receptions, and other events; (2) whether Stefan had shown that he has used the Property for weddings, receptions, and other events without abandonment since before July 24, 2001; and (3) whether to issue a Certificate of Occupancy Nonconforming as to the nonconforming use of the Property for weddings, receptions, and other events. *See id.* at art. III, § 18-13, art. X., at § 18-115. Thus, Meadows's alleged lack of authority does not excuse Stefan from exhausting administrative remedies.

Because Stefan failed to exhaust his administrative remedies by seeking review of the Board of Adjustment's decision under Local Government Code

section 211.011, the trial court lacks subject-matter jurisdiction over Stefan's declaratory-judgment claim, and the trial court erred in denying the City's plea to the jurisdiction as to this claim. *See Murphy*, 557 S.W.3d at 241–44; *Lazarides*, 367 S.W.3d at 799; *Lamar Corp.*, 270 S.W.3d at 613–614; *City of San Antonio*, 195 S.W.3d at 249–50. Thus, we sustain the City's first issue.

**D. Should the trial court have dismissed Stefan's takings claim?**

We presume for the sake of argument that Stefan pleaded an inverse-condemnation or takings claim based on the City's enforcement of the Zoning Ordinance as to the Property. A party must take advantage of statutory remedies that may moot the party's takings claim, rather than institute a separate proceeding asserting such a claim. *See City of Beaumont v. Como*, 381 S.W.3d 538, 540 (Tex. 2012) (per curiam); *Patel v. City of Everman*, 361 S.W.3d 600, 601 (Tex. 2012) (per curiam); *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 234–37 (Tex. 2011). If a party asserting a takings claim failed to take advantage of such a statutory remedy, the party's takings claim is barred, and a trial court would be correct in dismissing the takings claim based on a plea to the jurisdiction. *See Como*, 381 S.W.3d at 539–40. In its second issue, the City asserts that Stefan's takings claim is barred because he failed to avail himself of the statutory remedies under Local Government Code section 211.011.

Stefan did not seek judicial review of the Board of Adjustment's decision under Local Government Code section 211.011. *See* Tex. Loc. Gov't Code Ann. § 211.011(a). If Stefan had pursued this review, Stefan might have obtained a statutory remedy under section 211.011 that would have rendered his takings claim moot. *See* Tex. Loc. Gov't Code Ann. § 211.011(f). Because Stefan failed to avail himself of the review and remedies available under section 211.011, Stefan's

23

takings claims is barred, and the trial court should dismiss the takings claim. *See Como*, 381 S.W.3d at 539–40. We sustain the City's second issue.

### III.   CONCLUSION

Stefan did not plead a claim under chapter 245 to enforce that chapter by declaratory relief. Stefan did not seek judicial review of the Board of Adjustment's decision under Local Government Code section 211.011. Stefan pleaded a declaratory-judgment claim, and we presume for the sake of argument that he pleaded an inverse-condemnation or takings claim. *See* Tex. Civ Prac. & Rem. Code Ann. § 37.001, *et seq*. But because Stefan failed to exhaust his administrative remedies by seeking review of the Board of Adjustment's decision under Local Government Code section 211.011, the trial court lacks subject-matter jurisdiction over Stefan's declaratory-judgment claim. So, the trial court erred in denying the City's plea to the jurisdiction as to this claim. Because Stefan failed to avail himself of the review and remedies available under section 211.011, Stefan's takings claims is barred. For this reason, the trial court should dismiss the takings claim.

As this court recently stated in *San Jacinto River Authority v. Ogletree*, if the trial court lacks jurisdiction over all pleaded claims, "the [plaintiffs] are not entitled to a remand to plead new claims over which the district court may possess subject matter jurisdiction." 594 S.W.3d 833, 842–43 (Tex. App.—Houston [14th Dist.] 2020, no pet.). There is a difference between allowing a plaintiff an opportunity to plead more facts to show jurisdiction over claims that the plaintiff purported to plead and allowing the plaintiff a chance to assert new claims after the court of appeals concludes that the trial court lacked jurisdiction over the claims the plaintiff purportedly pled. *See id*. We reverse the trial court's order and render

24

judgment dismissing Stefan's claims for lack of subject-matter jurisdiction. *See id*.


/s/     Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Wise and Hassan (Hassan, J. concurring).