Brian D. MONEYHON and Cheryl
Parrish–Moneyhon,
Appellants

v.

Patricia MONEYHON, Appellee.

No. 14–06–00873–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 12, 2009.

John R. Gilbert, Angleton, S. Pilar Grantham, Pearland, Constance H Pfeiffer, Houston, TX, for appellants.

Mark R. Davis, Lake Jackson, Shannon Tigner, and James W. Bradford, Angleton, TX, for appellees.

Panel consists of Justices ANDERSON, FROST, and GUZMAN.

## OPINION

KEM THOMPSON FROST, Justice.

A husband and wife appeal a judgment from the trial court ordering the couple to convey title to a home, which the couple shared with the husband's mother, to the husband's mother. In five issues, the couple complains that (1) the judgment imposing a constructive trust on the home based on an alleged breach of fiduciary duty is improper because the judgment does not comport with the pleadings; (2) the trial court's judgment cannot be affirmed on any other basis; (3) the mother is precluded from seeking judicial assistance to reacquire title to the home that allegedly was fraudulently conveyed; (4) injunctive relief is improper; and (5) the home was a gift from the mother to the son. We reverse and render.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Before appellant Brian Moneyhon's marriage to appellant Cheryl Parrish-Moneyhon, Brian lived with appellee, his seventy-five-year-old mother, Patricia Moneyhon in a Houston home referred to by the parties as "Bash Place." By her own admission, Patricia was dependent on Brian's care, and had been for many years, because she was not in good health.[1] Patricia sold Bash Place, and proceeds from that sale were used to purchase a home in Lake Jackson. The title to the Lake Jackson home was transferred to Brian alone. Brian and Patricia moved to the home in Lake Jackson, which is the home at issue in this case.

Brian and Cheryl were married shortly after he and Patricia moved to Lake Jackson. Cheryl moved into the Lake Jackson home with Brian and Patricia. In the months that followed, Brian and Cheryl's relationship with Patricia deteriorated, which the couple attributed to Patricia's declining health and growing demands. The couple believed it was in Patricia's best interest for her to live in a facility that was better-equipped to meet her needs, and they served Patricia with a notice of eviction in hope that she would move to an assisted-living facility. Upon receiving the eviction notice, Patricia sued Brian and Cheryl, seeking an injunction against the couple to prevent her eviction.

Patricia petitioned the district court to determine ownership of the home and to declare a constructive trust. In her petition for injunction, Patricia made the following factual allegations:

- Patricia agreed to sell her Bash Place home and purchase the Lake Jackson home.
- The proceeds from the sale of Bash Place were dispersed to Patricia and Brian, with the bulk of the proceeds transferred to a title company in Lake Jackson.
- Patricia received roughly $49,000 by check, which was endorsed by Brian and deposited in a bank. Brian subsequently withdrew or spent the money to Patricia's damage.
- Patricia and Brian discussed the purchase of the Lake Jackson home with the understanding that they would reside there together. Each of them continuously have lived together at the Lake Jackson home since moving to the home in November 2004.
- Brian used the proceeds of the sale of Bash Place to purchase the Lake Jackson home. All of the money used for the purchase of the Lake Jackson home was Patricia's.
- Brian, by deed transfers, purposely transferred an undivided one-half interest in the Lake Jackson home to Cheryl, which was done without Patricia's consent or approval to Patricia's damage.
- In March 2006, the couple gave Patricia a thirty-day eviction notice, requesting her to vacate the premises of the Lake Jackson home.

Patricia also petitioned for the district court to declare a constructive trust, based on the following allegations:

- Patricia sold her Bash Place home. Unbeknownst to Patricia, Brian and Cheryl arranged for the purchase of

---

1. This court learned at oral argument that Patricia passed away after the parties' appellate briefs were filed. Accordingly, this court will proceed to adjudicate the appeal as if Patricia were still alive, and this court will use Patricia's name on all papers. *See* TEX. R.APP. P. 7.1(a). This court's judgment will have the same force and effect as if rendered when Patricia was living. *See id.*

the Lake Jackson home using entirely the proceeds from the sale of the Bash Place home. Brian took title to the Lake Jackson property.

- The couple, through a series of conveyances, transferred the home to each other. The couple obtained the property in complete disregard to Patricia's rights by promising or representing to Patricia that Patricia would own the property, but "if anything ever happened" to Patricia, Brian would receive the property. Brian promised to let Patricia live the rest of her life at the Lake Jackson home.

- After Patricia learned of the couple's "plan to dispossess [her] and own the property," Brian promised Patricia that he would convey the property to her. The couple did not convey the Lake Jackson home to Patricia.

- Brian's promises were material representations because Patricia did not agree that Brian would own the property to Patricia's exclusion. The couple's representations were false because they never intended to reconvey the property to Patricia, though the representations were made with the intent that Patricia would act upon them.

- Patricia fully performed on the agreement, and Brian and Cheryl breached the agreement by failing to fulfill the expressed promises and representations made. Brian and Cheryl collaborated with each other to obtain title to the Lake Jackson property using all of Patricia's funds.

- Patricia has been injured and deprived of her funds and property because she relied on the couple's promises and representations. The couple has been unjustly enriched by being permitted to stay on the Lake Jackson property. A constructive trust is the only remedy to prevent their unjust enrichment at Patricia's expense.

- Because the couple's conduct was fraudulent and malicious, Patricia is owed exemplary damages to deter similar conduct by the couple in connection with a home-equity mortgage on the Lake Jackson home.[2]

The couple denied Patricia's allegations and alleged that the Lake Jackson home was Brian's sole and separate property, in which he conveyed an undivided one-half interest to Cheryl just before their marriage. The couple alleged that they permitted Patricia to reside in the Lake Jackson home until she began verbally and physically assaulting the couple, and then they sought to evict Patricia. They also filed a counterclaim, alleging trespass to try title and that Patricia made an unconditional gift of the home to Brian.

After a bench trial, the trial court made the following findings:

- Clear and convincing evidence shows Patricia did not intend to make an absolute gift of the Lake Jackson home to Brian to her exclusion.

- A fiduciary relationship existed between Patricia and Brian, and Brian breached the relationship in failing to disclose factual information about Medicare and estate taxes and potential effects from the transaction.

- The conveyance to Brian from Patricia was a fraudulent conveyance.

The trial court issued a permanent injunction in favor of Patricia and ordered the couple to convey the Lake Jackson home

2. Patricia contends that Brian and Cheryl, through a series of deeds, conveyed title in the Lake Jackson home to each other, and they applied for a home-equity loan using that property as collateral.

to Patricia. The trial court ordered that Patricia take nothing for exemplary damages or for attorney's fees. The couple now appeals the trial court's judgment.

## II. ISSUES AND ANALYSIS

**Did the trial court err in rendering judgment based on the existence and breach of a fiduciary duty?**

In their first issue, Brian and Cheryl complain that the trial court erred in awarding Patricia relief based on a finding that Brian owed Patricia a fiduciary duty and breached that duty. According to Brian and Cheryl, because Patricia did not assert a claim for breach of a fiduciary duty, and the issue was not tried by consent, the trial court's finding is in error.

A trial court's judgment must conform to the pleadings. TEX.R. CIV. P. 301. Pleadings must give reasonable notice of the claims asserted. *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 354–55 (Tex.1995). A reviewing court should liberally construe the petition to contain any claims that reasonably may be inferred from the specific language as used in the petition and uphold the petition as to those claims, even if an element of a claim is not specifically alleged. *See id.* In making this determination, however, a reviewing court cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain. *San Saba Energy, L.P. v. Crawford,* 171 S.W.3d 323, 338 (Tex.App.-Houston [14 Dist.] 2005, no pet.). The petition must give fair and adequate notice of the claims being asserted, and, if the reviewing court cannot reasonably infer that the petition contains a claim, then it must conclude the petition does not contain this claim, even under a liberal construction. *See SmithKline Beecham Corp.,* 903 S.W.2d at 354–55. It is against this standard that we must analyze Patricia's pleadings to determine if they may be construed as containing a claim for breach of fiduciary duty.

Although Patricia pleaded for equitable relief in the form of a constructive trust, even under a liberal construction, Patricia's live petition for constructive trust cannot be said to contain any allegation or even a mention of the existence of a fiduciary relationship[3] or the breach of a fiduciary relationship.[4] Because the trial court's judgment awarded title to Patricia based on a breach of a fiduciary duty, the judgment did not conform to the pleadings, and the trial court erred in granting such relief in the absence of pleadings to support such relief or trial by consent.[5] *See*

3. A formal fiduciary relationship arises as a matter of law in certain situations, for example between attorney and client. *See Swinehart v. Stubbeman, McRae, Sealy, Laughlin, & Browder, Inc.,* 48 S.W.3d 865, 878 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). An informal relationship may give rise to a fiduciary duty when one person trusts in and relies on another, whether the relationship is a moral, social, domestic, or purely personal one. *See Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176 (Tex.1997). However, not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship. *See id.* at 176–77. Texas courts do not create such a duty lightly. *See id.*

4. During oral argument, Patricia's appellate counsel urged this court to consider an affidavit by Patricia, included in the record in support of Patricia's initial pleadings, as evidence that she alleged the existence of a fiduciary duty. Presuming that we may consider the affidavit as part of the live pleadings, any allegations in the affidavit support pleadings for misrepresentation, but do not support any alleged pleadings for the existence or breach of a fiduciary relationship.

5. Patricia asserts that Brian and Cheryl must have been aware that her petition contained a claim for breach of fiduciary duty because, in her petition, Patricia sought a constructive trust and, Patricia asserts, such relief is only

TEX.R. CIV. P. 301; *Binder v. Joe*, 193 S.W.3d 29, 32 (Tex.App.-Houston [1st Dist.] 2005, no pet.). If issues not raised by the pleadings are tried by express or implied consent of the parties, these issues shall be treated as if they had been raised by the pleadings. *See* TEX.R. CIV. P. 67, 301; *Baltzer v. Medina*, 240 S.W.3d 469, 476 (Tex.App.-Houston [14th Dist.] 2007, no pet.). To determine whether the issue was tried by consent, the court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Greene v. Young*, 174 S.W.3d 291, 301 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). Thus, absent record evidence that a breach-of-fiduciary-duty claim was tried by consent, the judgment on that claim cannot stand.

■ The record utterly fails to support trial by consent of a breach-of-fiduciary-duty claim. At no point did any party present evidence of a fiduciary relationship based on trust or confidence. Though the record indicates that Patricia depended on Brian for care and that he shared a joint checking account with her, nothing in the record indicates that the parties were trying the issue of whether Patricia and Brian's relationship involved such a high degree of trust and confidence as to give rise to a fiduciary duty or that Brian breached such a fiduciary duty.[6] To the contrary, it was only during closing arguments that Patricia's trial counsel mentioned—for the first time—a "confidential relationship" between Brian and Patricia. Prior to the close of evidence, however, no party presented evidence or made any reference to this alleged confidential relationship. Thus, we can only conclude that the issue of the existence or breach of a fiduciary duty was not tried by consent of the parties. Absent either trial by consent or pleadings to support a breach-of-fiduciary-duty claim, the trial court erred in granting Patricia relief on this basis. *See Baltzer*, 240 S.W.3d at 476. Accordingly, we sustain Brian and Cheryl's first issue.

## May the trial court's judgment be affirmed based on any other claim?

■ In Brian and Cheryl's second issue, they assert that the trial court did not find that they committed actual fraud and that the judgment may not be affirmed based on Patricia's actual fraud claims. Patricia asserts that the trial court did find in her favor as to the actual fraud claims based on the trial court's finding "the conveyance to Brian D. Moneyhon from Patricia Moneyhon a[sic] fraudulent conveyance." Based on statutory amendments, what used to be called a "fraudulent conveyance" is now called a "fraudulent transfer" under the Uniform Fraudulent Transfer Act. *See* TEX. BUS. & COMM.CODE ANN.

available when a fiduciary duty has been breached. This argument lacks merit. A constructive trust is available in other circumstances, for example, as a remedy for actual fraud. *See Swinehart*, 48 S.W.3d at 878.

6. Patricia argues on appeal that Brian and Cheryl, themselves, presented evidence concerning the issue of a fiduciary relationship, citing evidence of the joint bank account shared by Brian and Patricia, Brian's presence at the closing for both the Bash Place and Lake Jackson homes, and Brian's testimony of long-term care and financial support of multiple elderly family members, including Patricia. However, any evidence that could be construed as supporting the existence or breach of a fiduciary duty was elicited to prove or disprove fraud, an allegation upon which Patricia sought equitable relief as reflected in the pleadings. The doctrine of trial by consent does not apply when the evidence of an unpleaded matter is relevant to the pleaded issues because it would not be calculated to elicit an objection. *In re J.M.*, 156 S.W.3d 696, 705 (Tex.App.-Dallas 2005, no pet.); *RE/MAX of Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 328 (Tex.App.-Houston [1st Dist.] 1997, pet. denied).

§ 24.001, et seq. (Vernon Supp.2008). Claims under this statute are brought by one or more creditors to challenge transfers made by a debtor. *See id.* Claims under the Uniform Fraudulent Transfer Act do not match up with the allegations in Patricia's pleadings. In her petition, Patricia does not purport to assert any claims under the Uniform Fraudulent Transfer Act, and liberally construing the petition to contain any claims that reasonably may be inferred from its language, we cannot reasonably conclude that Patricia has pleaded any claims under this statute. On appeal, Patricia agrees that the trial court was not referring to the Uniform Fraudulent Transfer Act when it found a "fraudulent conveyance."

The trial court's intent in finding a "fraudulent conveyance" is explained in a letter that the trial court sent to counsel. In this letter the trial court explains its decision, stating that, "since the Court has found that Patricia had no intent to convey the property unconditionally to her son, and because of Brian's breach of the fiduciary relationship to his mother in failing to completely disclose factual information concerning Medicaid and estate taxes and his failure to disclose the potential affects of transaction, [sic] the Court hereby finds the conveyance to Brian from Patricia a fraudulent conveyance." We conclude that the trial court's subsequent finding of a "fraudulent conveyance" reflected its findings of no gift and a breach of fiduciary duty. In the context of this record, we cannot reasonably conclude that the trial court found that Brian and Cheryl committed actual fraud. Accordingly, we sustain Brian and Cheryl's second issue.

Because the trial court did not find any element of Brian and Cheryl's other plead-ed claims, these claims cannot provide a basis for affirming the trial court's judgment. *See* Tex.R. Civ. P. 299; *Vickery v. Comm'n for Lawyer Discipline,* 5 S.W.3d 241, 252 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). The only claim on which the trial court's judgment is based is a breach-of-fiduciary-duty claim that was not pleaded or tried by consent. Therefore, the equitable relief awarded in the trial court's order, conveying title in the Lake Jackson home to Patricia, necessarily must be reversed. *See W & F Transp., Inc. v. Wilhelm,* 208 S.W.3d 32, 46–7 (Tex. App.-Houston [14th Dist.] 2006, no pet.) (reversing and rendering a take-nothing judgment because jury's findings did not support liability against two appellants). Accordingly, the trial court's judgment is reversed.[7]

### III. Conclusion

The trial court awarded relief based on the existence and breach of a fiduciary duty. This theory, however, was neither pleaded nor tried by consent. The trial court did not find any elements of Patricia's other claims that would support the relief it granted; therefore, Patricia's other claims cannot provide a basis for affirming the trial court's judgment. For this reason, we reverse the trial court's judgment and render judgment that Patricia take nothing against Brian and Cheryl.

---

7. Because we sustain the first two issues, we need not and do not address Brian and Che- ryl's remaining issues.