**Affirmed as Modified and Opinion and Concurring Opinion filed December 28, 2012.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00369-CV

---

### KATY SHUK CHI LAU MESSIER, Appellant

### V.

### LUC J. MESSIER, Appellee

---

**On Appeal from the 311th District Court
Harris County, Texas
Trial Court Cause No. 2009-45158**

---

## C O N C U R R I N G   O P I N I O N

I join in the court's opinion addressing Katy Messier's second and third issues. Although I also agree that the parties' requests for injunctive relief were properly before the trial court, I would overrule Katy's first issue for different reasons than those stated by the majority. I instead would hold that most of the challenged injunctions that prohibit Katy from taking some action were placed at issue by Katy's live pleadings, and the propriety of the remaining injunctions, most

of which require Katy to take some action, was tried by consent.

## A. Matters Raised by Katy's Counterpetition

About two months after the agreed temporary orders were signed in December 2009, Katy Messier filed her second amended counterpetition, in which she "pray[ed] that the Court make all temporary injunctions permanent." For nearly every injunction that is included in the final decree of divorce and that prohibits Katy from taking some action, there is a parallel temporary order or injunction. I would hold that by asking the trial court to make this temporary relief permanent, Katy placed these issues before the trial court.[1]

### 1. Hiding or secreting the children

In the agreed temporary orders, Katy was enjoined from "hiding or secreting the children from the other party." The "other party" is Luc. In the final decree of divorce, Katy is enjoined from the identical conduct: "hiding or secreting the children from Luc J. Messier."

### 2. Discussing the litigation in the children's hearing

Under the agreed temporary orders, Katy was enjoined from "discussing the pending litigation or any manner related thereto with the children or in the presence of the children." In the final decree of divorce, she is enjoined from "discussing this litigation or any matter related thereto with the children or in the presence of the children." The language in the final decree of divorce has been changed from that of the agreed temporary orders only to reflect that the divorce litigation may no longer be "pending."

---

[1] In comparing the content of the two documents, I have standardized the capitalization and punctuation.

### 3. Unapproved travel

In the agreed temporary orders, it was ordered that Katy "shall not travel with [the children] outside the United States, without written approval of the other parent." It additionally was ordered that Katy "shall not travel with the children outside of Texas without approval from the other parent and after providing a detailed itinerary to the other parent." In the final decree of divorce, Katy is enjoined from "removing the children from the State of Texas or the United States without the specific written permission of Luc Messier."

The differences between the prohibitions of the two documents are limited to matters of form. Under the terms of the agreed temporary orders, Katy was required to obtain Luc's approval before traveling with the children between states or between nations, but the form in which such approval had to be given was specified only for the latter. In the final decree of divorce, approval was required in the same form—writing—for both interstate or international travel. Although the relief granted in one document was phrased as an "order" and in the other as an "injunction," the substance of each ruling is the same. *See Peck v. Peck*, 172 S.W.3d 26, 36 (Tex. App.—Dallas 2005, pet. denied) ("[W]hether the trial court entered an injunction . . . or a simple order that made the same prohibition within the divorce decree appears to be a distinction without a difference.") I therefore would conclude that Katy's pleading asking for this temporary injunction to be made permanent placed this issue before the trial court.

### 4. Applying for or renewing passports or visas

In the agreed temporary orders, Katy was enjoined from "applying for and or renewing any passport belonging to [either child]"; in the final decree of divorce, she was enjoined from "applying on behalf of the children for new or replacement passports or international travel visas." "A passport is a document identifying a

3

citizen, in effect requesting foreign powers to allow the bearer to enter and to pass freely and safely, recognizing the right of the bearer to the protection and good offices of [the issuing country's] diplomatic and consular officers." *United States v. Laub*, 385 U.S. 475, 481, 87 S. Ct. 574, 578, 17 L. Ed. 2d 526 (1967). A visa is "issued by the government of the country in which the holder of the passport desires to travel" and recognizes "the validity of a passport." *United States v. Rodriguez*, 182 F. Supp. 479, 484 (S.D. Cal. 1960) *aff'd in part, rev'd in part on other grounds sub nom. Rocha v. United States*, 288 F.2d 545 (9th Cir. 1961). Because both documents often are needed for international travel, I would hold that the portion of the final decree of divorce permanently enjoining Katy from renewing or applying for such documents on the children's behalf did not impermissibly exceed the scope of matters raised by Katy's pleading.

### 5. *Removing the children beyond Harris County, Texas*

In the agreed temporary orders, Katy was enjoined from "removing the children beyond Harris County, Texas, acting directly or in concert with others unless specifically authorized herein." In the final decree of divorce, Katy is enjoined from "interfering in any way with Luc J. Messier's possession of the children or taking or retaining possession of the children, directly or in concert with other persons, except as permitted by order of the Court."

Here, the conduct prohibited by the permanent injunction is broader than that prohibited by the agreed temporary orders. "Removing the children beyond Harris County" without authorization is just one way in which Katy could interfere with Luc's possession of the children. I would hold that this particular means of interfering with Luc's possession was raised by Katy's pleading, and the question of whether the trial court should enjoin Katy from using other means to interfere with Luc's possession of the children was tried by consent as discussed below.

4

**B.      Matters Tried by Consent**

In Luc's live pleadings at the time of trial, he asked the trial court "to determine whether there is a risk of international abduction of the children by [Katy] and to take such measures as are necessary to protect the children." Although Luc did not cite the specific statute in his petition, this is a request for the trial court to make a determination under Texas Family Code section 153.501. This statute, entitled "Necessity of Measures to Prevent International Parental Child Abduction," provides in pertinent part as follows:

> In a suit, if credible evidence is presented to the court indicating a potential risk of the international abduction of a child by a parent of the child, the court, on its own motion or at the request of a party to the suit, shall determine under this section whether it is necessary for the court to take one or more of the measures described by Section 153.503 to protect the child from the risk of abduction by the parent.

TEX. FAM. CODE ANN. § 153.501(a) (West 2008). The measures to protect the child from the risk of abduction may include the following:

- prohibiting the parent and anyone acting on the parent's behalf from removing the child from Texas or the United States;
- requiring the parent to surrender any passport issued in the child's name, including a passport issued in the name of both the parent and the child;
- prohibiting the parent from applying for a new or replacement passport or international travel visa for the child;
- requiring the parent to provide written notice of the child's passport and travel restrictions to the U.S. Department of State's Office of Children's Issues and the relevant foreign consulate or embassy;
- requiring the parent to provide these same governmental offices with an authenticated copy of the court order detailing the restrictions and documentation of the parent's agreement to the restrictions;
- requiring the parent to provide proof to the court that these governmental offices received such written notices;
- including in the court's order a provision identifying the United States as the

5

child's country of habitual residence; and

- including a statement that a party who violates the order may be subject to civil or criminal penalties or both.[2]

*Id.* § 153.503(4), (5), (8)(A), (8)(C).

In a proper case, a trial court could impose restrictions such as those described above even in the absence of pleadings or a motion requesting such relief. *See id.* § 153.501 ("[I]f credible evidence is presented . . . , the court, on its own motion . . . *shall determine* under this section whether it is necessary for the court to take one or more of the measures described . . . .") (emphasis added); *see also* Tex. R. Civ. P. 301 (providing that the court's judgment must conform to the pleadings and "the nature of the case proved," and award the prevailing party "all the relief to which he may be entitled either in law or equity"). Here, however, the trial court specifically stated in its written rendition that "the court is unable to find that credible evidence has been presented indicating a potential risk of the international abduction of the children by a parent."

In general, a trial court must not grant injunctive relief that is not prayed for. *Holubec v. Brandenberger*, 111 S.W.3d 32, 39 (Tex. 2003). Under the Texas

---

[2] One such criminal penalty would be conviction of the offense of interference with child custody. *See* Tex. Penal Code Ann. § 25.03 (West Supp. 2012). That statute provides in relevant part as follows:

    (a)    A person commits an offense if the person takes or retains a child younger than 18 years of age :

        (1)    when the person knows that the person's taking or retention violates the express terms of a judgment or order, including a temporary order, of a court disposing of the child's custody;

. . .

        (3)    outside of the United States with the intent to deprive a person entitled to possession of or access to the child of that possession or access and without the permission of that person.

*Id.* In the final decree of divorce, Katy was permanently enjoined from interfering with Luc's possession of the children.

Rules of Civil Procedure, pleadings must give reasonable notice of the claims asserted. *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354–55 (Tex. 1995). A reviewing court should liberally construe the petition to contain any claims that reasonably may be inferred from the specific language used in the petition and uphold the petition as to those claims, even if an element of a claim is not specifically alleged. *See id.* In making this determination, however, a reviewing court cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain. *Moneyhon v. Moneyhon*, 278 S.W.3d 874, 878 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The petition must give fair and adequate notice of the claims being asserted, and, if the reviewing court cannot reasonably infer that the petition contains a given claim, then the court must conclude the petition does not contain such a claim, even under a liberal construction. *See SmithKline Beecham Corp.*, 903 S.W.2d at 354–55; *Baltzer v. Medina*, 240 S.W.3d 469, 476 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (reversing trial court's appointment of father as sole managing conservator where such relief was neither requested nor tried by consent).

On the other hand, if issues not raised by the pleadings are tried by express or implied consent of the parties, these issues will be treated as if they had been raised by the pleadings. TEX. R. CIV. P. 67; *Baltzer*, 240 S.W.3d at 476. Based on my review of this record, I would hold that Katy's counsel consented to the trial court's determination of appropriate permanent injunctive relief.

On the first day of trial, even before voir dire, the trial court and parties' attorneys discussed Luc's proposed jury charge concerning international kidnapping. Luc's counsel argued that the trial court should ask the jury to determine whether there is a risk of international abduction of a child by a parent of the child. Katy's counsel argued,

When you get into rights and duties and injunctions and restraints and so on and so forth, . . . those are Judge functions and not jury functions . . . . At most this is subsumed in the questions of the jury deciding whether to appoint him or her as sole managing conservator. It is also subsumed in the consideration of whether or not to restrict domicile or geographic location.

The trial court sustained the objection to the submission of a jury question concerning the risk of international abduction. Thus, even before any evidence was heard, Katy's counsel took the position that if the jury found that Luc should be appointed sole managing conservator, then the trial court would determine whether injunctions and restraints, if any, were appropriate.[3] The trial court agreed, and the jury did find that Luc should be appointed sole managing conservator. As expected, the trial court then addressed the questions of what findings should be made and what injunctive relief, if any, should be included in the judgment. I would hold that the injunction issue was tried by consent.

In all other respects, I agree with the majority's analysis.


/s/     Tracy Christopher
         Justice



Panel consists of Justices Boyce, Christopher, and Jamison (Jamison, J., majority).

---

[3] The jury was asked to determine whether the children's residence should be restricted to a specific geographic location only if it first found that (1) both parents should be appointed joint managing conservators, and (2) one parent should have the exclusive right to designate the children's primary residence. Because the jury found that Luc should be appointed sole managing conservator, it did not reach the question of whether the geographic location of the children's primary residence should be restricted.