**Affirmed and Opinion filed October 5, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00190-CV

**SUPERBASH 2017, LLC, EDWARD CORRAL AND THADDEUS BERRY, Appellants**

**V.**

**FUN FEST ENTERTAINMENT, JOHN HARDY, COREY WILLIAMS AND LORENZO WARE, Appellees**

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2017-18368**

## O P I N I O N

Three parties to a settlement agreement appeal the trial court's judgment after a bench trial in which the trial court rendered a money judgment against them based on the plaintiffs' claims for breach of a written settlement agreement. The appellants assert that the settlement agreement is unenforceable because two parties to the agreement failed to sign it. However, at trial, appellants took the opposite position—that the settlement agreement was a valid and enforceable

contract but that the other side materially breached the agreement first. Concluding that appellants' arguments lack merit, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2017, Houston hosted the National Football League's Super Bowl LI. Music World Properties, LLC ("Music World") owned an entertainment complex (the "House of Dereon Center") that included "The House of Dereon Event Center." This complex was close to many of the planned Super Bowl festivities and provided a potential venue for hosting a Super Bowl party headlined by musicians. Appellees/plaintiffs John Hardy, Corey Williams, and Lorenzo Ware were the principals of appellee/plaintiff Fun Fest Entertainment ("Fun Fest").[1]

Hardy, Williams, and Ware decided that Fun Fest should hold a Super Bowl LI event at Music World's House of Dereon Center the day before Super Bowl LI. Trial evidence showed that Hardy and Williams entered into a contract with Music World to rent its facility from 5 a.m. on Saturday, February 4, 2017 to 5 a.m. on Sunday, February 5, 2017 (the "First Rental Contract").

Defendant/appellant Superbash 2017, LLC ("Superbash") is a Texas limited liability company. Trial evidence showed that defendant/appellant Edward Corral

---

[1] In the live petition in today's case, the plaintiffs allege that "Fun Fest Entertainment is a general partnership formed under the laws of Texas" and that "[i]ts members include John Hardy, Corey Williams, and Lorenzo Ware." In the Settlement Agreement discussed below, Hardy, Williams, and Ware are described as "partners of Fun Fest Entertainment a/k/a Fun Fest Entertainment, Inc." Trial evidence showed that a Texas corporation named Fun Fest Entertainment, Inc. was formed on December 2, 2016. At trial, John Hardy testified that he was president of "Fun Fest Entertainment" and president of "Fun Fest Entertainment, Incorporated." According to Hardy, the general partnership "Fun Fest Entertainment" and the Texas corporation "Fun Fest Entertainment, Incorporated" are the same entity. Before December 2, 2016, "Fun Fest Entertainment, Incorporated" did not exist. After that date, Hardy, Williams, and Ware may have been acting on behalf of a general partnership named "Fun Fest Entertainment" or on behalf of a Texas corporation named "Fun Fest Entertainment, Incorporated." We need not decide this question to adjudicate today's appeal, and in this opinion we refer to the entity for whom Hardy, Williams, and Ware were acting as "Fun Fest."

is a "director" of Superbash and that defendant/appellant Thaddeus Berry helped Superbash with artist support and ticket sales. After Music World rented the House of Dereon Center to Fun Fest, Superbash decided that it wanted to hold a Super Bowl party at the same venue on the same date, *i.e.*, Saturday, February 4, 2017. In September 2016, Corral and Superbash signed a contract with Music World to rent the House of Dereon Center from 5 a.m. on Saturday, February 4, 2017 to 5 a.m. on Sunday, February 5, 2017, the same time period covered by the First Rental Contract. Superbash agreed to pay Music World twice the rent that Fun Fest had agreed to pay. Superbash and Corral were aware of the First Rental Contract. According to Corral, Matthew Knowles[2] of Music World told Corral that the First Rental Contract had a clause that allowed Music World to buy out the First Rental Contract by returning the deposit and paying Fun Fest ten percent of rental price in the First Rental Contract. Corral testified that Knowles showed him the First Rental Contract and the clause in question. According to Corral, Music World's purported ability to buy out the First Rental Contract made Corral feel good about renting the House of Dereon Center, and Corral signed a rental contract with Music World ("Second Rental Contract").

Fun Fest disagreed that Music World had the ability under the First Rental Contract to buy out Fun Fest. In October 2016, Fun Fest, Hardy, Williams, and Ware (collectively, the "Fun Fest Parties") filed suit in the trial court below against Music World and Knowles (the "Music World Parties"), alleging breach of the First Rental Contract and tortious interference and seeking injunctive relief (the "First Suit"). In this lawsuit, the Fun Fest Parties did not sue Superbash, Corral, or Berry. Trial evidence showed that Fun Fest then obtained a temporary injunction against Music World and Knowles.

---

[2] The Fun Fest Parties alleged that Matthew Knowles is the President and Director of Music World.

3

The Fun Fest Parties, the Music World Parties, and the Superbash Parties engaged in mediation. Hardy testified that all the parties agreed to a settlement agreement. A written agreement, entitled "Settlement Agreement and Mutual Release of Claims" ("Agreement") was created. Under the terms of the Agreement, Hardy, Williams, Ware, Fun Fest, Knowles, Music World, Corral, Berry, and Superbash were parties to the Agreement. The parties agreed that the "Effective Date" of the Agreement would be "the date the Agreement is executed by all Parties." The Agreement also provided as follows:

(1) As of the Effective Date, the First Rental Contract shall be cancelled, revoked, and rescinded, and neither the Fun Fest Parties nor the Music World Parties shall claim any rights or remedies under the First Rental Contract;

(2) The Music World Parties shall pay to Fun Fest a total of $65,000, as follows: (a) $16,500 within three business days of the Effective Date; (b) $23,500 within fourteen days of the Effective Date; and (c) $25,000 on or before February 10, 2017;

(3) On or before March 10, 2017, the Superbash Parties shall pay to the Fun Fest Parties, by cashier's check made payable to Fun Fest Entertainment, Inc., the amount of $135,000;

(4) No later than 5 p.m. on the calendar day following the Effective Date, the Music World Parties and the Fun Fest Parties each shall file in the First Suit a notice of nonsuit with prejudice of all claims and defenses alleged by the party in the First Suit;

(5) The Agreement provided for the mutual release of certain claims; and

(6) The Fun Fest Parties agreed that they would not, at any time on or after the Effective Date, and until such time as the Music World Parties no longer have any interest in the House of Dereon Center, enter or attempt to enter or be present or attempt to be present on or at the House of Dereon Center.

Section 21 of the Agreement provided that "No Party shall be bound by the terms of this Agreement unless and until each Party has properly executed an original of

4

this Agreement." The last page of the Agreement contained the following language at the top: "**IN WITNESS WHEREOF**, and intending to be legally bound, each Party hereto has caused this Agreement to be executed as of the date(s) set forth below." Below this language were places for the following parties to sign the Agreement: Music World, Knowles, Fun Fest, Hardy, Williams, Ware, Superbash, Corral, and Berry. The undisputed evidence at trial showed that on January 13, 2017, Knowles on behalf of Music World, Knowles on his own behalf, Hardy, Williams, Ware, Corral, and Berry signed in the place designated for their signature on a counterpart of the last page of the Agreement. No evidence at trial showed that Fun Fest or Superbash ever signed any counterpart of the Agreement in the place designated for the signature of the respective party. On January 13, 2017, the Fun Fest Parties filed a nonsuit with prejudice of all their claims in the First Suit.

After none of the Music World Parties or the Superbash Parties made any payment to any of the Fun Fest Parties under the Agreement, the Fun Fest Parties filed this lawsuit in March 2017.[3] The Fun Fest Parties asserted claims against the Music World Parties and the Superbash Parties for breach of the Agreement. The Fun Fest Parties alleged that on or about January 13, 2017, the Fun Fest Parties, the Music World Parties and the Superbash Parties executed a valid and enforceable written contract. The Fun Fest Parties asserted that the Music World Parties and the Superbash Parties had breached the Agreement by failing to make the payments required by the Agreement. The Fun Fest Parties asserted breach-of-contract claims based on alleged breaches of the Agreement. They did not seek

---

[3] The First Suit was filed in the 234th District Court. The second suit was filed in the 127th District Court but was transferred by the Administrative Judge of the Civil Trial Division to the 234th District Court pursuant to the local rules of the Civil Trial Division of the District Courts of Harris County.

relief based on any alleged oral agreement.

In the Superbash Parties' live answer, they asserted a general denial and the following affirmative defenses: (1) the Fun Fest Parties allegedly lacked the capacity to sue or recover in the capacity in which they had sued; (2) the defense of discharge by material breach; and (3) the defense of offset. Although the Fun Fest Parties alleged that Superbash had executed a valid and enforceable written contract on or about January 13, 2017, Superbash did not set up in its live pleading a denial of the execution of the Agreement by itself or by its authority.

Shortly before this case was set for trial, the Fun Fest Parties and the Music World Parties entered into a settlement agreement, and the trial court severed the Fun Fest Parties' claims against the Music World Parties into a different case. The claims by the Fun Fest Parties against the Superbash Parties proceeded to a bench trial. Hardy testified that it was his understanding that Corral and Berry signed the Agreement for themselves and also on behalf of Superbash. Corral testified that the Superbash Parties did not have a lawyer representing them in relation to the First Lawsuit. Corral said it was his understanding that the Agreement canceled the First Rental Contract and that pursuant to the Agreement and the Second Rental Contract, Fun Fest was not supposed to be using the name "House of Dereon." When asked what Superbash was supposed to be getting out of the Agreement "that you agreed and obligated yourself to pay $135,000 for," Berry answered, "[w]e were expecting to get the [House of Dereon Center] and everything that was connected to the compound, you know, all their rights to use it for us; not have any interference, be able to put on the event and have a great event." Berry stated that "the whole reason for entering into [the Agreement] was to just — everybody have a clear understanding, you know, what was going to happen." Berry testified as follows:

[Counsel for the Superbash Parties]: And, so, if the [Superbash Parties] did not get what they were hoping for from the [Agreement], meaning the unrestricted, unfettered, uninterfered-with use of the [House of Dereon Center] in name, because Fun Fest continued to use it after the date of the [Agreement], January 13, Superbash did not get what they had intended for and bargained for with the [Agreement]; is that fair?

[Berry]: Yes. We didn't get — once we signed the agreement, we thought for sure everything was going to go as stated. You know, they would move out of the way, take all their stuff down, have no interference. And we can, you know, market and make sure that people were sure that the Superbash event was going on.

Berry further testified that "one of the things Superbash had bargained for" was Superbash's ability to make money from its Super Bowl event.

After the bench trial the trial court rendered judgment in favor of the Fun Fest Parties on their breach-of-contract claims against the Superbash Parties rendering judgment that the Fun Fest Parties recover from the Superbash Parties, jointly and severally, $135,000 plus prejudgment interest, postjudgment interest, and court costs. The trial court did not award the Fun Fest Parties any attorney's fees.

At the request of the Superbash Parties, the trial court filed findings of fact and conclusions of law. The trial court found that "[o]n or about January 13, 2017, the parties entered into and executed a Settlement Agreement and Mutual Release of Claims . . . wherein . . . the Superbash [Parties] agreed to pay [the Fun Fest Parties] in the amount of $135,000 on or before March 10, 2017."

The Superbash Parties filed a timely motion for new trial, which was overruled by operation of law. Though the Superbash Parties filed their notice of appeal more than ninety days after final judgment, under the Supreme Court of Texas's holding in *Verburgt v. Dorner*, the law deemed that the Superbash Parties had filed a motion for extension of time to file a notice of appeal. *See* 959 S.W.2d

7

615, 617 (Tex. 1997). This court granted the Superbash Parties' motion for extension of time to file a notice of appeal; so their notice of appeal was timely. *See id.*

## II. ISSUES AND ANALYSIS

On appeal, the Superbash Parties assert in a single issue that the trial court erred by enforcing the Agreement—that two parties bound by the trial court's judgment did not sign—despite the signature requirement in Rule 11 of the Texas Rules of Civil Procedure and the Agreement's express provision that the Agreement does not bind any party until all parties have signed it. Under their sole appellate issue, the Superbash Parties assert two arguments. The Superbash Parties argue that the trial court erred in enforcing the Agreement because the Agreement unambiguously provides that it does not bind any party until each party to the Agreement has properly executed an original of the Agreement and because Fun Fest and Superbash did not properly execute an original of the Agreement (the "First Argument"). The Superbash Parties also argue that the trial court erred in enforcing the Agreement because the Agreement is unenforceable as a matter of law under Rule 11 of the Texas Rules of Civil Procedure, in light of Rule 11's requirement that any agreement between parties "touching any suit pending" be signed by all parties and the failure of Fun Fest and Superbash to sign the Agreement (the "Second Argument").

**A.  Liberally construing the Superbash Parties' briefing as sufficiently briefing an argument that the trial evidence is legally insufficient to support a finding that the Agreement existed as a valid contract, does this argument have merit?**

In their appellate briefing, the Superbash Parties do not assert that the evidence is legally or factually insufficient. They do not cite the standard of review applied to a legal-sufficiency challenge or to a factual-sufficiency challenge. In

8

making the First Argument, the Superbash Parties assert that under the Agreement's unambiguous language, the Agreement does not bind any party until each party to the Agreement has properly executed an original of the Agreement. The Superbash Parties rely on section 21 of the Agreement, which provides that "No Party shall be bound by the terms of this Agreement unless and until each Party has properly executed an original of this Agreement." The other sentence in section 21 provides as follows: "This Agreement may be executed in counterparts, each of which shall be deemed to be an original and all of which when taken together shall constitute one or more of the same instruments."

We presume for the sake of argument that, under the Agreement's plain text, no party to the Agreement is bound by the Agreement's terms unless and until each party to the Agreement has properly executed an original of the Agreement. Under this presumption, if one or more parties to the Agreement did not properly execute an original of the Agreement, the Agreement would not be a binding contract, and the Agreement would not exist as a valid contract. *See Lujan v. Alorica*, 445 S.W.3d 443, 448–49 (Tex. App.—El Paso 2014, no pet.); *West Texas Hospitality, Inc. v. Enercon Int'l, Inc.*, No. 07-09-0213-CV, 2010 WL 3417845, at \*5 (Tex. App.—Amarillo Aug. 31, 2010, no pet.) (mem. op.). The essential elements of a breach-of-contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Liberally construing the Superbash Parties' briefing, they have sufficiently briefed an argument that the trial evidence is legally insufficient to support a finding that the Agreement existed as a valid contract because the evidence is legally insufficient to support a finding that Fun Fest or Superbash

properly executed an original of the Agreement.[4] This challenge to the legal sufficiency of the evidence falls within an exception to the usual preservation-of-error requirements. *See* Tex. R. App. P. 33.1(d) (stating that "[i]n a civil nonjury case, a complaint regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief"); *Briones v. Brazos Bend Villa Apartments*, 438 S.W.3d 808, 815 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In their live pleading the Fun Fest Parties asserted claims against the Superbash Parties for breach of the Agreement, alleging that on or about January 13, 2017, the Fun Fest Parties, the Music World Parties and the Superbash Parties executed a valid and enforceable written contract. In the Superbash Parties' live answer, they asserted a general denial and the following affirmative defenses: (1) the Fun Fest Parties allegedly lacked the capacity to sue or recover in the capacity in which they had sued; (2) the defense of discharge by material breach; and (3) the defense of offset.

Although the Fun Fest Parties alleged that Superbash had executed a valid and enforceable written contract on or about January 13, 2017, Superbash did not set up in its answer a denial of the execution of the Agreement by itself or by its authority. Instead, the Superbash Parties pleaded the defense of discharge by material breach. Under this defense, a defendant asserts that it is not liable for breach of a contract because prior to the defendant's alleged breach, the plaintiff materially breached the contract, thus discharging the defendant from any further obligation to perform the contract. *See Mustang Pipeline Co. v. Driver Pipeline*

---

[4] Even under a liberal construction of the Superbash Parties' briefing, the Superbash Parties have not sufficiently briefed challenge to the factual sufficiency of the evidence based on the Agreement's providing that no party to the Agreement is bound by its terms unless and until each party to the Agreement has properly executed an original of the Agreement.

*Co.*, 134 S.W.3d 195, 196 (Tex. 2004); *Copeland v. Walker*, No. 05-17-00925-CV, 2018 WL 6333240, at \*3 (Tex. App.—Dallas Nov. 29, 2018, no pet.) (mem. op.). In pleading this defense, the Superbash Parties asserted that the Agreement "expressly canceled, revoked and rescinded the [First Rental Contract]." The Agreement provided that its "Effective Date" is "the date the Agreement is executed by all Parties." In their answer, the Superbash Parties alleged that the Fun Fest Parties "continued to exercise rights granted by the [First Rental Contract] **after the Effective Date** of the [Agreement] and in material breach of the [Agreement], including but not limited to continuing to advertise the Fun Fest [Parties'] now-cancelled event at the [House of Dereon Center], [and] selling tickets and collecting money for the Fun Fest [Parties'] now-cancelled event at the [House of Dereon Center]." (emphasis added). The Superbash Parties alleged that these material breaches of the Agreement by the Fun Fest Parties "depriv[ed] [the Superbash Parties] of the benefit of their bargain." The Superbash Parties also asserted the defense of offset "for any monies collected by [the Fun Fest Parties] after the Effective Date of the Settlement Agreement[5] which the [Fun Fest Parties] had no right to collect . . . ."

In their answer, the Superbash Parties did not make any of the following assertions: (1) that the parties did not execute a valid contract; (2) that no contract between the parties was formed; or (3) that the Agreement never became binding on any party because a party to the Agreement did not execute an original of the Agreement. The Superbash Parties did not plead that the Agreement never became a binding contract, and then plead in the alternative that even if the Agreement had become a binding contract, the Superbash Parties were discharged from any payment obligation by the Fun Fest Parties' prior material breach of the

---

[5] underlining in the original.

Agreement. Instead, without pleading in the alternative, the Superbash Parties pled just the opposite. They asserted that the Agreement had canceled the First Rental Contract, and that after the Effective Date—defined as the date the Agreement was executed by all Parties—the Fun Fest Parties had materially breached the Agreement, depriving the Superbash Parties of the benefit of their bargain.

During trial, the Superbash Parties did not mention section 21 of the Agreement, which provides that no party is bound by the Agreement until each party has properly executed an original of the Agreement. During trial, the Superbash Parties did not assert that the Agreement was never formed, not binding, or unenforceable because the Agreement requires that each party properly execute an original of the Agreement, yet not all parties properly executed an original of the Agreement. At trial, the Superbash Parties focused on their defense of discharge by prior material breach. In open court during trial, the trial court engaged in a colloquy with the trial attorney for the Superbash Parties. During this colloquy, the trial court stated that the House of Dereon Center "was tied up by Fun Fest like existing [sic] contract until January 13th. And then **y'all were able to reach an agreement to get rid of their contract on January 13th**. And, so, then you're saying it took another 12 days after the contract. They got rid of their contract. Then there was a 12-day gap before y'all were able to sell to Eventbrite." (emphasis added). In response to this summary by the trial court, the attorney for the Superbash Parties said, "Exactly." Later on during this colloquy counsel for the Superbash Parties stated that "the settlement agreement required [the Fun Fest Parties] to stop using [the House of Dereon Center]."

On this record, we conclude that the Superbash Parties judicially admitted that the Superbash Parties and the other parties to the Agreement entered into and executed the Agreement as a valid and binding agreement. *See Li v. 1821 West*

12

*Main Development, LLC*, No. 14-10-01227-CV, 2011 WL 5926679, at \*4–5 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, pet. denied) (holding appellant could not dispute the existence of a contract with appellee because appellant judicially admitted the existence of the contract in her live pleading) (mem. op.); *Wheeler v. White*, 314 S.W.3d 225, 228–29 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (holding that party's premising her claim on the enforceability of an agreement constituted a judicial admission by the party that the agreement was enforceable for the purposes of the lawsuit and relieved the opposing parties from having to prove that the agreement was enforceable). Therefore, the Superbash Parties may not dispute the existence of the Agreement and the Fun Fest Parties were relieved of the burden of having to prove the existence of the Agreement as a valid contract. *See Li*, 2011 WL 5926679, at \*4–5; *Wheeler*, 314 S.W.3d at 228–29; *Aguiar*, 167 S.W.3d at 450. Thus, the argument that the trial evidence is legally insufficient to support a finding that the Agreement existed as a valid contract lacks merit because the Superbash Parties judicially admitted that the Superbash Parties and the other parties to the Agreement entered into and executed the Agreement as a valid and binding agreement. *See Li*, 2011 WL 5926679, at \*4–5; *Wheeler*, 314 S.W.3d at 228–29; *Aguiar*, 167 S.W.3d at 450.

**B.      Did the Superbash Parties preserve error in the trial court on the First Argument?**

In the First Argument, the Superbash Parties contend that the trial court erred in enforcing the Agreement because the Agreement unambiguously provides that it does not bind any party until each party to the Agreement has properly executed an original of the Agreement and because Fun Fest and Superbash did not properly execute an original of the Agreement. As a threshold matter, we consider whether the Superbash Parties preserved error in the trial court as to the First Argument.

13

There are "important prudential considerations" behind the preservation-of-error rules. *Mansions in the Forest, L.P. v. Montgomery County*, 365 S.W.3d 314, 317 (Tex. 2012). First, requiring that parties initially raise complaints in the trial court conserves judicial resources by providing trial courts the opportunity to correct errors before appeal. *Id.* Second, judicial decision-making is more accurate when trial courts have the first opportunity to consider and rule on error. *Id.* Third, a party "should not be permitted to waive, consent to, or neglect to complain about an error at trial and then surprise [the party's] opponent on appeal by stating [the party's] complaint for the first time." *Id.* (internal quotations omitted). In their appellate briefing, the Superbash Parties do not assert that the evidence is legally or factually insufficient. They do not cite the standard of review applied to a legal-sufficiency complaint or to a factual-sufficiency complaint. Absent a liberal construction of the Superbash Parties' briefing as sufficiently briefing the legal-sufficiency challenge addressed in the previous section, no exception to the usual preservation-of-error requirements applies, and to reverse the trial court's judgment based on the First Argument, the Superbash Parties needed to follow these requirements in the trial court. *See* Tex. R. App. P. 33.1(a); *Mansions in the Forest, L.P.*, 365 S.W.3d at 317.

To preserve a complaint for appellate review the record must show that (1) the complaint was made to the trial court by a timely request, objection, or motion that: (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and (B) complied with the requirements of the Texas Rules of Evidence or the Texas Rules of Civil or Appellate Procedure; and (2) the trial court: (A) ruled on the request, objection, or motion, either expressly or implicitly; or (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

14

Tex. R. App. P. 33.1(a).

None of the Superbash Parties asserted in the trial court that the Agreement may not be enforced because the Agreement unambiguously provides that it does not bind any party until each party to the Agreement has properly executed an original of the Agreement and because Fun Fest and Superbash did not properly execute an original of the Agreement. To the contrary, the Superbash Parties asserted the opposite. A week before trial, the Superbash Parties submitted proposed findings of fact and conclusions of law. We presume, without deciding, that these proposed findings of fact and conclusions of law constituted a timely request and that the trial court's issuing of different findings of fact and conclusions of law after judgment constituted an implicit ruling on the request by the trial court. In these proposed findings, the Superbash Parties asked the trial court to make the following findings of fact:

> 11. **On January 13, 2017, a Settlement Agreement was entered into** to resolve the First Lawsuit and provide Edward Corral, Thaddeus Berry and Superbash 2017, LLC with their contracted for rights under the second Leas[e] Agreement with Music World Properties, LLC.
>
> . . .
>
> 15. **In consideration for the Settlement Agreement**, Edward Corral, Thaddeus Berry and Superbash 2017, LLC **were required to pay $135,000** via check made payable to Fun Fest Entertainment, Inc. by March 10, 2017.
>
> . . .
>
> 17. John Hardy, Corey Williams, Lorenzo Ware, [the Music World Parties], Edward Corral and Thaddeus Berry are named parties to the Settlement Agreement and signed the Settlement Agreement, as of January 13, 2017.
>
> 18. Fun Fest Entertainment, Inc. is a named party to the Settlement Agreement and the Settlement Agreement is not signed by Fun Fest Entertainment, Inc.

15

19.    Superbash 2017, LLC is a named party to the Settlement Agreement and the Settlement Agreement is not signed by Superbash 2017, LLC.

. . .

22.    **As of January 13, 2017 and as a material term of the Settlement Agreement**, John Hardy, Corey Williams, Lorenzo Ware, [and Fun Fest] no longer had a right to sell tickets, collect money and/or retain money for a Superbowl 2017 event at the [House of Dereon Center].

23.    After January 13, 2017 and **in material breach of the Settlement Agreement** John Hardy, Corey Williams, Lorenzo Ware, [and Fun Fest] continued to use the names HOUSE OF DEREON or MUSIC WORLD ENTERTAINMENT in advertising and promotional materials disseminated to the general public for their now-cancelled Superbowl 2017 event at the [House of Dereon Center].

24.    After January 13, 2017 and **in material breach of the Settlement Agreement** John Hardy, Corey Williams, Lorenzo Ware, [and Fun Fest] continued to sell tickets, collect money and/or retain money from ticket sales for their now-cancelled Superbowl 2017 event at the HOUSE OF DEREON or [the House of Dereon Center].

. . .

26.    The affirmative acts of selling tickets, collecting money and/or retaining money from ticket sales for their now-cancelled Superbowl 2017 event at the [House of Dereon Center] by John Hardy, Corey Williams, Lorenzo Ware, [and Fun Fest] after January 13, 2017, materially interfered with Edward Corral, Thaddeus Berry and Superbash 2017, LLC's **rights under the Settlement Agreement** and the second Lease Agreement.

. . .

39.    **Pursuant to the Statute of Frauds**, TEX. BUS. & COM. CODE §26.01, the Settlement Agreement **is void** because it is **not signed by all the parties** to the Settlement Agreement, specifically [Fun Fest] and Superbash 2017, LLC, and never became effective.

. . .

42.    Any alleged obligation to pay money under the Settlement

Agreement by Edward Corral, Thaddeus Berry and Superbash 2017, LLC to [Fun Fest], John Hardy, Corey Williams, [and] Lorenzo Ware . . . was discharged by the **prior, material breach of the Settlement Agreement** by [Fun Fest], John Hardy, Corey Williams, [and] Lorenzo Ware . . . through the continued use of the name HOUSE OF DEREON and MUSIC WORLD ENTERTAINMENT in advertising and promotion materials for a Superbowl 2017 event at the [House of Dereon Center] and selling tickets, collecting money and/or retaining money from ticket sales for a cancelled Superbowl 2017 event at the [House of Dereon Center], after the Settlement Agreement was signed by these parties.

Various findings and conclusions proposed by the Superbash Parties indicate that the Agreement is binding, valid, and in existence. The Superbash did propose one conclusion of law in which the court would conclude that the Agreement is void under the Statute of Frauds because it is not signed by all parties and never became effective. But, none of the proposed findings or conclusions state that the trial court may not enforce the Agreement because the Agreement unambiguously provides that it does not bind any party until each party to the Agreement has properly executed an original of the Agreement and because Fun Fest and Superbash did not properly execute an original of the Agreement. The Superbash Parties did not voice this complaint at trial, nor did they raise it in their motion for new trial. After carefully considering the record, we conclude that the Superbash Parties waived the First Argument by failing to preserve error on it in the trial court. *See In re E.W.*, No. 14-19-00666-CV, 2020 WL 742327, at \*13 (Tex. App.—Houston [14th Dist.] Feb. 13, 2020, pet. denied) (maj. mem. op.); *In re L.W.*, No. 12-19-00375-CV, 2020 WL 2078793, at \*2 (Tex. App.—Tyler Apr. 30, 2020, no pet.) (mem. op.); *Parker v. Three Rivers Flying Service*, 220 S.W.3d 160, 163–64 (Tex. App.—Eastland 2007, no pet.).

**C. Did the Superbash Parties preserve error in the trial court on the Second Argument?**

In the Second Argument, the Superbash Parties assert that the trial court erred in enforcing the Agreement because the Agreement is unenforceable as a matter of law under Rule 11 of the Texas Rules of Civil Procedure, in light of Rule 11's requirement that any agreement between parties "touching any suit pending" be signed by all parties and the failure of Fun Fest and Superbash to sign the Agreement. Rule 11 provides that "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." Tex. R. Civ. P. 11. Rule 11's text might appear plain and categorical, and the Supreme Court of Texas has held that Rule 11 "means precisely what it says." *Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex. 1984). Yet, in articulating this holding the *Kennedy* court also declared that the holding "should not be interpreted as requiring 'slavish adherence' to the literal language of [Rule 11] in all cases." *Kennedy*, 682 S.W.2d at 529. The high court stated that an agreement that does not comply with Rule 11 nonetheless may be enforced for certain "equitable reasons." *Id*; *Massey v. Galvan*, 822 S.W.2d 309, 317–18 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (enforcing an agreement touching a pending suit despite the failure of the agreement to comply with the Rule 11 requirements based on the "equitable reasons" exception stated by the Supreme Court of Texas in *Kennedy v. Hyde*).[6]

---

[6] In *Araiza v. Bumb*, the court did not cite the part of *Kennedy* in which the high court stated that an agreement that does not comply with Rule 11 nonetheless may be enforced for certain "equitable reasons," nor did the *Araiza* court address the *Massey* case. No. 14-18-00633-CV, 2019 WL 3725554, at *2–*3 (Tex. App.—Houston [14th Dist.] Aug. 8, 2019, no pet.) (mem. op.). The *Araiza* court did not address whether a court may enforce an agreement that does not comply with Rule 11 based on "equitable reasons." *See id*. Despite the *Araiza* opinion, we are still bound by the precedent from *Kennedy* and *Massey*. *See Glassman v. Goodfriend*, 347

18

If not all of the parties have signed a settlement agreement governed by Rule 11 and if no exception to the enforcement of Rule 11 applies, then Rule 11 would bar enforcement of the agreement, but application of this rule would not prevent the formation or existence of the agreement. *See* Tex. R. App. P. 11 (stating that "[u]nless otherwise provided in these rules, no **agreement** between attorneys or parties touching any suit pending will be **enforced** unless . . .") (emphasis added); *Kennedy*, 682 S.W.2d at 528 (stating that "[a] better statement of the general rule is that Rule 11 is a minimum requirement for **enforcement** of all **agreements** concerning pending suits, including, but not limited to, agreed judgments") (emphasis added). Thus, even if Rule 11's signature requirement applied to the Agreement, this requirement would be an affirmative defense, rather than something that vitiates an essential element of the Fun Fest Parties' breach-of-contract claims. *See* Tex. R. App. P. 11, 94; *Kennedy*, 682 S.W.2d at 528; *Aguiar*, 167 S.W.3d at 450. The Superbash Parties did not plead Rule 11 in their answer, and the parties did not try by consent the issue of whether Rule 11 bars enforcement of the agreement. *See Moneyhon v. Moneyhon*, 278 S.W.3d 874, 879 (Tex. App.—Houston [14th Dist.] 2009, no pet.). In this context, even under a liberal construction of the Superbash Parties' briefing, we conclude that the Superbash Parties have not sufficiently briefed a challenge to the legal or factual sufficiency of the evidence based on Rule 11.

Absent a liberal construction of the Superbash Parties' briefing as challenging the sufficiency of the evidence, no exception to the usual preservation-of-error requirements applies, and to reverse the trial court's judgment based on the Second Argument, the Superbash Parties needed to satisfy these requirements in

---

S.W.3d 772, 781–82 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc); *Burnett v. Sharp*, 328 S.W.3d 594, 597–98 (Tex. App.—Houston [14th Dist.] 2010, no pet.)

19

the trial court. *See* Tex. R. App. P. 33.1(a); *Mansions in the Forest, L.P.*, 365 S.W.3d at 317. None of the Superbash Parties asserted in the trial court that Rule 11 of the Texas Rules of Civil Procedure required the Agreement to be signed by all parties or that the Agreement was unenforceable under Rule 11 because the Agreement was not signed by all the parties. The Superbash Parties did not raise the Second Argument in the trial court or obtain an adverse ruling on a request, objection, or motion in which they asserted the Second Argument. After carefully considering the record, we conclude that the Superbash Parties waived the Second Argument by failing to preserve error on it in the trial court. *See In re E.W.*, 2020 WL 742327, at *13; *In re L.W.*, 2020 WL 2078793, at *2; *Parker*, 220 S.W.3d at 163–64.

### III. CONCLUSION

Liberally construing the Superbash Parties' briefing, the Superbash Parties have sufficiently briefed an argument that the trial evidence is legally insufficient to support a finding that the Agreement existed as a valid contract because the evidence is legally insufficient to support a finding that Fun Fest or Superbash properly executed an original of the Agreement. This argument lacks merit because the Superbash Parties judicially admitted that the Superbash Parties and the other parties to the Agreement entered into and executed the Agreement as a valid and binding agreement. The Superbash Parties waived the First Argument and the Second Argument by failing to preserve error on either argument in the trial court. Therefore, we overrule the Superbash Parties' sole issue and affirm the trial court's judgment.

/s/    Randy Wilson
       Justice

Panel consists of Justices Zimmerer, Poissant, and Wilson.

20